STATE v. NIMROD CARMICHAEL.

145 N. W. (2d) 554.

October 7, 1966—No. 40,047.

*Fred Albert,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

On February 26, 1965, defendant was convicted by a jury in the District Court of Hennepin County of theft of a portable television set from the Romsaas Furniture Company in Minneapolis in violation of Minn. St. 609.52, subd. 2(1).[1] On March 12, 1965, after a presentence investigation he was sentenced to the custody of the commissioner of corrections at the Stillwater State Prison for an indeterminate term.

On the day of his sentence defendant filed a petition for a writ of habeas corpus in the District Court of Hennepin County. On April 19, 1965, the court made its order quashing the writ. Defendant subsequently appealed from the judgment of conviction. Counsel on appeal was appointed by this court as required by Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. ed. (2d) 811.

Evidence with respect to the theft of the television set disclosed the following: On January 22, 1965, defendant, accompanied by one Joe Williams, both of whom are colored, drove up to the front entrance of a retail furniture store operated by Raymond and John Romsaas at 1204 East Lake Street, Minneapolis. Both men were wearing light trench coats. After entering the store they informed Raymond Romsaas that they were interested in the purchase of a "hide-a-bed." Raymond was then in full charge of the store, his brother John being absent for lunch. At that time there was on display in the store a new portable television set having a reasonable market value of $159.50. Raymond testified that after a brief discussion with Williams the latter accompanied him to a warehouse in the rear of the store where the "hide-a-beds" were located; that defendant

---

[1] Minn. St. 609.52, subd. 2, provides in part: "Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

"(1) Intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property."

was then left alone in the front part of the store; that after two or three minutes defendant joined Raymond and Williams in the warehouse; and that all three returned to the front part of the store at approximately 12:20 p. m., defendant and Williams leaving shortly thereafter without making any purchase.

John Romsaas testified that on the same day shortly after 12:15 p. m. he was walking on Lake Street approaching the store when he observed a colored man wearing a light trench coat carry a television set from the store and place it in a white Corvair automobile parked in front of the store; that he then observed this man reenter the store; that he immediately wrote down the Minnesota license number of the automobile as 5DB-641 because he believed his brother had sold the television set and he, John, recorded the license number as a precaution against the possibility that a "bum check" had been given for its purchase; that he then entered an adjacent store and conversed with the owner for about 5 minutes before returning to his own store; that his brother then left for lunch and while he was gone John looked at a dinette table where the television had been displayed and noticed that it was gone; that after Raymond returned and after a conversation with respect to the television set, John called the police and reported it stolen. The evidence indicated that from the time defendant and Williams entered the furniture store until John returned from lunch no other person had been in the store.

Some 17 hours after the theft, defendant and Williams were arrested by Minneapolis Police Officer Stanley Taylor on "suspicion of burglary." With respect to defendant's arrest, Officer Taylor testified as follows:

"Q. Will you tell the jury where you were at approximately 5:30 a. m. that morning [January 23, 1965]?

"A. Fourteenth and Fourth Southeast, Minneapolis.

"Q. What, if anything, did you observe at that time and at that location?

"A. As we rounded the corner we observed a man standing in the doorway and a 1965 Corvair, 5DB641, parked at the curb with the motor running and another man in the car.

"Q. Is 5DB641 the license number?

"A. That is right.

152

\* \* \* \* \*

"Q. Did you stop after seeing this and talk to them?

"A. We did.

"Q. Did they identify themselves?

"A. Yes.

"Q. The man in the doorway, did he give you a name?

"A. Yes.

"Q. What name did he give you?

"A. Joe Williams.

"Q. Did you have occasion to talk to the man in the car?

"A. After he came to the squad car.

"Q. What name did he give?

"A. Nimrod Carmichael."

On cross-examination he was asked:

"Q. What did you arrest Mr. Carmichael for that morning? .

"A. Suspicion of burglary.

"Q. What burglary was that?

"A. We found his partner in the doorway and we found burglary tools in his car."

On January 27, 1965, while defendant was in custody and before he was represented by counsel, he was interviewed by Detective William Rieman who testified as follows:

"I introduced myself to Carmichael and I told him I was up there relative to the television set. I told him that I wanted him to get the television set back for me, one that him and Joe Williams had taken. He didn't say anything and I asked him if he knew which one I meant. He was still puzzled and I said it's the one you took over on Twelfth and Lake at Romsaas Furniture Company. He said, well, he would have to talk to Joe. Well, I said, Joe is bailed out, which he was, out on bail. I told him to get ahold of Joe \* \* \* that the owner was pretty hot about it; he hadn't signed a Complaint at that time and we wanted that set back. He said that he would get busy and try and do something about getting it back. I asked him where it was, if he knew where it was, and he said no.

I asked him if he thought he could locate it and he thought if he could get to a telephone he could."

In his testimony at the trial defendant admitted that he and Williams had been in the Romsaas furniture store on January 22, 1965, but fixed the time at 11 a. m. instead of 12:20 p. m. He further stated that he and Williams had been traveling in a white Corvair automobile and that they had gone into the store to make inquiry with respect to a "hide-a-bed," remaining for only about 5 minutes. He denied taking the television set and by way of an alibi testified that at 12:30 p. m. he was in downtown Minneapolis making a purchase at the Dahl Pharmacy located at Marquette Avenue and 9th Street. In support of this alibi he called two employees of the Dahl Pharmacy, Stanley Markson and Charles Thang. Each of these witnesses testified they recalled defendant being in the Dahl Pharmacy sometime between 12 and 1 o'clock on a Friday for about one-half hour, but neither of them could recall the exact date on which this had occurred.

With respect to his conversation with Detective Rieman, defendant's version was that Detective Rieman had said something about a television set that was missing and "if it was gotten back why it would—I don't know, something about they wanted it back, and he said Joe and I was supposed to have taken it so what I told him, I said, well, I will have to call Joe and see what this is all about"; that defendant "made an effort to call Joe * * * but I couldn't contact him."

On appeal it is defendant's contention that his arrest on "suspicion of burglary" was invalid because there was no evidence that he had been committing a crime at the time and, accordingly, the court should have rejected the testimony with respect to what the police officer arresting him had found in his car; that his constitutional rights were violated when he was held in municipal jail from January 23 to January 29, 1965, before counsel was appointed to represent him; that any admission or confession made by him during such period accordingly was inadmissible; and in particular, that the testimony of Detective Rieman to the effect that defendant had said he would "get busy and try and do something about getting it [the television set] back" was inadmissible.

■ The evidence in support of defendant's conviction for the theft of the television set is convincing. One of the owners of the store from which the set was taken was an eyewitness to the theft and described the white Corvair automobile in which defendant placed the set. Defendant was later arrested in the same automobile and admitted that he had been in the store at about the time the set was taken. The testimony of one of the store owners was corroborated by the other owner, who fixed the time at which defendant was in the store and described the interval during which the defendant had been left alone in that part of the store in which the television set was on display. Such evidence is more than adequate to support the jury's verdict as to defendant's guilt.

■ We find nothing improper in the direct testimony of Officer Taylor with reference to the circumstances under which defendant was arrested. He testified that defendant and Joe Williams had been arrested on "suspicion of burglary" at a time and place and under circumstances which neither man could logically explain; and that he and a fellow police officer had then searched defendant's automobile without finding a television set. Certainly up to this point such testimony was favorable to defendant's defense that he had not been guilty of stealing the television set. On cross-examination, however, defendant's counsel, in seeking to establish that defendant's arrest had nothing to do with the television set, questioned Officer Taylor with regard to the burglary of which defendant was suspected. Officer Taylor responded that defendant was seated in the Corvair automobile while Williams was standing in the doorway of a store, and that following their arrest the officers' search of the Corvair disclosed burglary tools. No objection to this testimony and no motion to strike it from the record were made. The purpose of the cross-examination was to disassociate defendant's arrest from any connection with the theft of the television set, and it appears that the cross-examination was successful in this respect. Accordingly, under such circumstances we cannot find error in the admission of this testimony adduced by defendant's own counsel for the purpose of establishing his innocence. 14 Dunnell, Dig. (3 ed.) § 7193.

■ An inference as to defendant's guilt could possibly be drawn from the testimony of Detective Rieman with respect to defendant's statements

after his arrest. From such testimony there can be implied an admission by defendant that he was familiar with the fact that a television set had been taken from the Romsaas store and that if inquiry were made of his associate, Williams, it might be located. These claimed admissions of defendant were made January 27, 1965, some 4 days after his arrest and before counsel had been appointed to represent him. The record fails to disclose that he was then advised that any statements he might make could be used against him at his trial. Under the requirements of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, it is clear that had proper objection been made, the described testimony of Detective Rieman should have been rejected. However, under Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882, the requirements of Miranda, of course, would not be applicable here because defendant's trial took place in February 1965, long before the Miranda decision, which under Johnson is made applicable only prospectively from June 13, 1966.

■ There still remains for decision whether the admissions described were voluntary even though made in the absence of counsel and of a warning to defendant that he was under no obligation to make them or that they might be used against him. When Detective Rieman's testimony was submitted, no objections were made to it and after its admission no motion was made to have it stricken. On the contrary, defendant submitted evidence to establish that he had not made the statements attributed to him therein and that the statements he actually made to Rieman disclosed that he had no knowledge whatever of the theft of the television set described. Certainly there is nothing to indicate that the statements attributed to defendant were induced by any threats or by any promises of benefits. Since they were made during the course of ordinary police investigative processes prior to the date of Miranda v. Arizona, *supra,* and were received without objection as to their voluntariness, it would follow that there was no error in the reception of testimony with respect thereto. State ex rel. Ogg v. Tahash, 273 Minn. 187, 140 N. W. (2d) 692.

■ Defendant claims that he was held for an unreasonable length of time before appointment of counsel and before being taken before a

magistrate in compliance with Minn. St. 629.14.[2] While this may be true, such factors would not deprive the court of jurisdiction of his person or the subject matter of the case. When defendant appeared for arraignment, no objection was made because of his detention for some time before being brought before a magistrate or because of the failure of the court to appoint counsel for him during this period. While subsequent to Miranda v. Arizona, *supra,* such factors would have made the statements attributed to defendant inadmissible, these requirements are inapplicable here and we must hold, as we have on numerous occasions, that these factors in themselves would not justify a holding that defendant's conviction was invalid. As we stated in State v. Demry, 260 Minn. 173, 179, 109 N. W. (2d) 587, 591—

"* * * this [the delay after arrest and before preliminary hearing] in itself would not deprive the district court of jurisdiction over defendant's person or of his trial for the crime described. Insofar as the record discloses, at no time prior to conviction did defendant object to the delay. This court has never held that such a delay would deprive the court of jurisdiction."

See, also, State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N. W. (2d) 99; State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898.
    Affirmed.

---

[2] Minn. St. 629.14 provides: "The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by * * * imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest * * *; and thereafter his answer shall be heard as if he had been arrested on a warrant."