# STATE v. FRANK HARTLEY SUTTON, JR.

152 N. W. (2d) 57.

June 30, 1967—No. 40,069.

*Stephen E. Lee,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

PETERSON, JUSTICE.

Defendant appeals from a conviction of aggravated robbery[1] committed in Hennepin County on January 17, 1965, for which he was sentenced to the custody of the commissioner of corrections for a term not to exceed 10 years. The evidence of defendant's participation, with an accomplice, in the armed robbery of a Clark Oil and Refining Service Station at 2000 Portland Avenue, Minneapolis, on that date is so overwhelming as hardly to require recitation except as it bears on the two issues raised on this appeal:

(1) The voluntary admissions of defendant made to an arresting police officer en route to the courthouse are claimed by defendant to have been erroneously received into evidence contrary to the familiar Escobedo[2] and Miranda[3] doctrines; and

(2) Although the evidence established that one of the two bandits was armed with a dangerous weapon, defendant claims that in the absence of proof beyond a reasonable doubt that it was he, rather than his accomplice, who was so armed, the evidence was insufficient to sustain the conviction.

Defendant, Frank Sutton, Jr., and his accomplice, Harrison Matthews, confronted Victor Sassen, the station attendant, with drawn guns at about 10:15 p. m. on January 17, 1965. One was a real gun but, unknown to Sassen, the other was a plastic toy pistol—and who had which was also unknown to Sassen. The bandits took from Sassen his belt and attached moneychanger, the money from his pants pockets, and a windshield cleaning device. They discovered a five dollar bill in his pocket-

---

[1] Minn. St. 609.245 provides: "Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

[2] Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977.

[3] Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694.

book, too, and, because Sassen had failed to mention it, Sutton said, "I don't know, I should shoot you for lying."

Sassen reported the robbery to the police as soon as the bandits fled. Sassen noted and reported to the police the license number and description of their automobile, including the fact that the rear window of the car was broken out. He gave a description of the men, including his observation that the accomplice wore a T-shirt which was heavily blood-stained. Within minutes, two officers in a police squad car spotted the suspects' car, pursued it at high speed, caught up to it at Fourteenth Street and Washington Avenue, and arrested its occupants, Sutton and Matthews.[4] A squad of two other police officers arrived at the scene shortly thereafter. The time that had elapsed from the time of the robbery to the time of the arrest was less than 20 minutes.

A search of the automobile at the time of arrest disclosed a toy plastic pistol on the front seat and a loaded .32 caliber automatic "Savage" pistol in the glove compartment. A belt and moneychanger were found under the front seat on the passenger side of the automobile,[5] which items Sassen later identified as those taken from him during the robbery. A window cleaning device was observed on the front seat, but the officers did not take it into custody. A search of the men revealed $56.11 in coins and currency on the person of Matthews. Sassen subsequently identified Sutton and Matthews as the robbers. Sutton and Matthews were taken to the courthouse in separate squad cars.

■ On the way to the courthouse Officer Robert Kulseth, without informing defendant of either his right to remain silent or his right to counsel, asked Sutton if he had been involved in the robbery. Sutton denied it. He instead volunteered an alibi, in substance as follows: That he had earlier been drinking at the Western Bar and later drove with a man and a woman to the Harbor Bar;[6] that "they" dropped the woman off

---

[4] A customer who arrived at the station as the bandits fled gave chase for a short distance but lost contact in the traffic.

[5] During the pursuit of the suspect car, the officers observed that the occupant on the passenger side was bending over as if he were "doing something on the floor of the automobile."

[6] The addresses are not disclosed in the record.

at the Harbor Bar and proceeded west on Washington Avenue "and then turned around and were stopped by this squad." Officer Kulseth testified, *without objection,* to this conversation at trial.

Defendant thereafter testified in his own defense and gave a significantly different account, substantially as follows: That he had been drinking large quantities of beer and vodka in two bars, much of the time in the company of Matthews and Matthews' wife, the last stop being at the Harbor Bar; that Mr. and Mrs. Matthews had quarreled and she had struck and wounded Matthews on the head; that defendant left the Harbor Bar alone; that he had walked in a southerly direction on Park Avenue, where he saw Matthews' car, "hollered at him," and entered Matthews' car; that they then drove in a northerly direction and were arrested as they entered upon Washington Avenue.[7] Sutton also conceded at trial that Matthews, in his presence, had told the arresting officers that Sutton had entered his automobile "a couple of blocks away," and one of the arresting officers testified that Matthews had said he picked up Sutton on "12th and Washington Avenue South."

Defendant argues, upon the authority of Escobedo and Miranda, that his false exculpatory statement upon arrest was highly damaging and was erroneously admitted because elicited during an accusatory stage of interrogation without appropriate advice of his right to counsel and his right to remain silent. Damaging it was, for on this record the jury's verdict of guilt would seem to have been inescapable. Erroneously admitted, however, it was not. This defense articulated the strictures of Miranda, rather than Escobedo. Miranda, however, is inapplicable as a matter of law because the trial and conviction (March 5, 1965) occurred prior to the Miranda decision (June 13, 1966), which is not retroactive in its application. Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882; State v. Carmichael, 275 Minn. 148, 145 N. W. (2d) 554. Escobedo (decided June 22, 1964), on the other hand, is inapplicable on its facts. The essential fact situation in Escobedo was that the accused was deprived of consultation with his attorney prior to making a confession and was so deprived by affirmative conduct of the law-enforce-

---

[7] Sutton testified to previous criminal convictions for car theft and armed robbery.

ment officials. See, State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 547, 141 N. W. (2d) 3, 9. Sutton's voluntary statement to the police is therefore distinguishable and constitutionally admissible both because it was not itself an incriminating admission or confession, being instead intended as an exculpatory alibi, and because there is no claim, in any event, that he either requested or was denied counsel before making his statement. State ex rel. Ogg v. Tahash, 273 Minn. 187, 140 N. W. (2d) 692; State v. Winge, 274 Minn. 571, 144 N. W. (2d) 704; State v. Housker, 273 Minn. 42, 139 N. W. (2d) 474.

■ Defendant makes the claim that he was denied competent counsel because of the public defender's failure to make timely effort by objection or motion to exclude from evidence the defendant's statement to the arresting officer, particularly because "any attorney with knowledge that his client was to give one alibi at the trial would not permit testimony of previously-given, but patently false, alibi to be admitted against him."

It is true, of course, that a meritorious constitutional claim for the exclusion of evidence under either Escobedo or Miranda may be foreclosed on appeal by the failure to make timely objection in the trial court. But, for reasons we have indicated, the constitutional claim was not meritorious and the objection would have been fruitless. State v. Carmichael, *supra*.[8] The attempt to circumvent the effect of Carmichael by claiming incompetence of counsel is equally without merit. It is not the function of this court to second-guess the trial attorney's choice of trial strategy, except only in the unusual case where it may be said to be a demonstration of such incompetence or mismanagement as to make the trial a "farce or a mockery of justice." Rivera v. United States (9 Cir.) 318 F. (2d) 606, 608; State v. Waldron, 273 Minn. 57, 70, 139 N. W. (2d) 785, 795. As a matter of fact, defendant himself *insisted* upon testifying in his own behalf notwithstanding the fact that the public defender urged against it, and after both his counsel and the court care-

---

[8] Although we have indicated that the rule may be relaxed in unusual circumstances where to otherwise stand upon technical niceties might result in a manifest miscarriage of justice, State v. Taylor, 270 Minn. 333, 133 N. W. (2d) 828; State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, this case is plainly not such a case.

fully explained his right to refrain from so doing. Under the facts of this case, moreover, the evidence was so overwhelming that this event, while damaging, was probably not determinative in the jury's verdict. What we said in State ex rel. Adams v. Rigg, 252 Minn. 283, 288, 89 N. W. (2d) 898, 903, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149, is, then, particularly pertinent:

"* * * Clearly, absent infidelity on the part of his attorney, a defendant should not be permitted to urge the ignorance or incompetence of, or mismanagement by, his attorney as a ground for a new trial, even in a criminal case, *unless there be a strong showing of both incompetence and prejudice.*" [9]

■ The claim that defendant could not be convicted without proof that he, and not his accomplice, held the real gun is utterly without merit. The information under which defendant was tried alleged that Sutton and Matthews robbed Sassen "while armed with a dangerous weapon, to-wit: a .32 caliber automatic 'Savage' pistol" and that they were then and there *"each aiding, advising and counseling each other, and being concerned in the commission of the crime."* (Italics supplied.) Minn. St. 609.05, subd. 1, provides:

"A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

It is clear that Sutton and Matthews committed a robbery and that a dangerous weapon was used in the crime, which is all that the statute requires for the aggravated robbery conviction of either of them.

Affirmed.

---

[9] We should add, somewhat parenthetically, that any argument to the effect that a defendant has a fundamental right to have counsel attempt to save him from the just result of his own deliberate and "patently false" statements is not itself an argument of constitutional stature.