## STATE v. EUGENE HENRY MADISON.*

160 N. W. (2d) 680.

August 9, 1968—No. 40,929.

---

* Certiorari denied, 393 U. S. —, 89 S. Ct. 904, — L. ed. (2d) —.

*C. Paul Jones,* State Public Defender, *Roberta K. Levy,* Assistant State Public Defender, and *Rosalie E. Wahl,* for appellant..

*Douglas M. Head,* Attorney General, *William B. Randall,* County Attorney, and *Mentor C. Addicks, Jr.,* and *Thomas M. Quayle,* Assistant County Attorneys, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of conviction.

Defendant, Eugene Madison, was convicted of robbery in violation of Minn. St. 609.245. At the time of his arrest on the charge here, he was on parole and had approximately 125 years to be served on prior sentences. Upon his conviction here, he was sentenced according to law, this sentence to be served concurrently with the others.

On May 12, 1966, at about 10 p. m. a man wearing sunglasses and a black trenchcoat entered Monsour's Bar in St. Paul, took out a gun, and said that it was a stickup. At the trial, the bartender, Joseph Monsour (a part-owner of the bar), and two customers identified the defendant as the robber. The suspect took the money from the billfolds of the two

customers and Monsour, $100 from the cash register of the bar, and $1,000 from the safe after directing Monsour at gunpoint to open it. He then ordered all three men to go into the men's washroom and instructed them to remain there until he finished looking around. The men stayed there until they heard the front door of the bar slam, at which time they emerged and called the police. The episode took approximately 10 minutes.

The suspect was also observed by two witnesses who were in a parked car behind the tavern. About the time of the robbery, they noticed a white Ford with two men in it park across the street. They saw one of the men get out of the car and walk toward the front door of the bar, which was out of their field of vision. About 10 minutes later, they observed the same man run from what appeared to be the entrance of the bar and get into the parked car, which then sped off with its lights out.

The facts surrounding the arrest of defendant, as found by the trial judge at a Rasmussen hearing, were that about 6 p. m. on Friday, May 13, the day after the robbery, two police officers passed a parked 1963 four-door white Ford sedan. Two men were seated in the car. The one on the passenger's side of the front seat was wearing a black rain- or trenchcoat. The passenger and the Ford corresponded with descriptions of the robbery suspect and the car thought to have been used in the robbery, which the officers had received earlier over the police radio.

They turned around and pulled up behind the Ford. Officer Robert Page got out and talked to the driver of the Ford, who identified himself as Robert Willey. He was placed in the squad car where Page's partner, Officer Richard Schmidt, had remained. Page returned to the Ford and asked defendant, the passenger, who he was. Defendant, after some delay, identified himself as Eugene Madison. While neither officer had seen Madison before, they knew of his record, and Schmidt testified that before starting on tour duty that day, he had told other police officers that Madison could be the robber of the bar. In any event, after Madison had identified himself, the officers decided that they had reasonable cause to arrest him. They went to the right side of the Ford and told Madison to get out as they were going to take him to the station. Both officers

advised him at some stage of the arrest that he was being arrested for a felony but not that it was for the robbery of Monsour's Bar.

After the suspect got out of the Ford, the officers attempted to search him, but he resisted them, and they were forced to abandon the search for a time. They endeavored to handcuff him and succeeded in getting the handcuffs on one hand, but it was only with the aid of some firemen that defendant was finally handcuffed, placed in the squad car, and taken to the Public Safety Building.

A search of defendant's pockets, made at the Public Safety Building, disclosed a gun wrapped in a paper bag, a "pocket secretary" containing a check made out by a Donald Mellom,[1] and bills and change totaling $64.50. Officer Page testified that after bringing defendant to the Public Safety Building he searched the squad car and found a roll of bills amounting to $508 partially stuffed between the seat and backrest of the rear seat.

On Monday, May 16, a complaint was filed in the municipal court of St. Paul charging defendant with robbery of Monsour's Bar. The complaint was not executed before a judge but before a deputy municipal court clerk. Defendant was brought before the municipal court the next morning. While en route to that hearing defendant told Detectives Erwin Jahnke and Arthur Pagel that $68 of the money found belonged to him. The preliminary hearing, at which a special appearance was made by defendant, occurred on May 31. The information was filed June 1, and arraignment was held the next day. A motion to suppress statements and seized evidence was heard July 11 and denied January 6, 1967. The motion to dismiss for lack of jurisdiction because of the insufficiency of the complaint under the rule in State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382, undated but served on the state on December 20, 1966, was also denied on January 6, 1967. The jury trial commenced on that day, and a verdict of guilty was returned January 12. On the following day he was sentenced to prison, and this appeal was taken from the judgment of conviction.

The legal issues raised by defendant on appeal are: (1) Whether the

---

[1] The check was later identified as taken from Monsour's Bar. Joseph Monsour testified that the check was taken in the robbery.

court lacked personal jurisdiction over defendant when he was held about 3½ days before police brought him before a magistrate; (2) whether it lacked jurisdiction when the complaint was not signed by a magistrate and, according to defendant, did not contain facts so that the magistrate could determine if there was probable cause to believe that defendant was guilty; (3) whether defendant was deprived of a fair trial and due process of law when a statement was admitted into evidence which he claims violated his Fifth Amendment privilege against self-incrimination and was obtained during an unreasonable delay between the time of his arrest and first appearance in court; and (4) whether he was deprived of a fair trial when the state's attorney was permitted to introduce evidence which indicated a prior arrest or conviction. The trial court held in the negative on each question.

■ There is no specific rule in Minnesota as to the length of time a suspect may be detained before being brought before a magistrate for a preliminary hearing. Here, defendant was held from the time of his arrest without warrant on Friday, May 13, until the forenoon of Tuesday, May 17—about 3½ days counting the intervening Sunday during which court was not in session.

In State v. Carmichael, 275 Minn. 148, 145 N. W. (2d) 554, the court held that the fact that a defendant was unreasonably detained for 6 days before being brought before a magistrate did not deprive the court of jurisdiction over defendant and the subject matter. Accord, State v. Demry, 260 Minn. 173, 109 N. W. (2d) 587. As stated in Carmichael, the sole effect of the unreasonable delay would be to render the evidence and statements obtained during the period inadmissible at the trial.

It is our opinion that the delay of about 3½ days between the time defendant was arrested and the time when he appeared before a judge did not deprive the court of personal jurisdiction in the instant case. The district court judge, after the Rasmussen hearing and a hearing on jurisdiction, denied defendant's motion to dismiss for lack of jurisdiction. Before defendant's preliminary hearing, the judge of municipal court ruled that he had personal jurisdiction over him.

It must be remembered that defendant was arrested about 6 p. m. on Friday night. There is evidence that he was intoxicated at the time

and resisted arrest. Minn. St. 629.34(3) provides that the arrest of a person may be lawfully made by a peace officer without a warrant when a felony has been committed and he has reasonable cause for believing the person arrested to have committed it. When so arrested, one must be taken before a judge or magistrate with all practicable speed and complaint must be made against him setting forth the ground for the arrest.

On the evening of defendant's arrest, Joseph Monsour went to the St. Paul Public Safety Building. He was shown between 50 and 100 photographs and selected from them a photograph of defendant, identifying him as the man who held him up. Monsour again that evening identified defendant in a four-person "show-up." After that, Monsour identified a check removed from defendant's pocket secretary at the time of his arrest as one taken in the holdup. He also said a gun removed from defendant's coat was similar to the one used in the holdup.

According to respondent's brief, the information obtained from Monsour as well as statements of several witnesses and reports of police who investigated the case were then typewritten and included in the police file. The St. Paul municipal court was open during the morning of Saturday, May 14, but respondent claims there was not enough time after Monsour had identified defendant for the police to prepare their file and present it to the county attorney (who in practice prepares the written complaints for the municipal court) before court opened the next morning. The police file was brought to the county attorney's office on Monday, May 16, for review. The complaint was prepared in the office of the county attorney that day, and Detective Jahnke took it with his file to a deputy clerk of the municipal court and swore out a complaint against defendant.

On Tuesday forenoon, defendant was brought to the St. Paul municipal court where the judge advised him of his right to a preliminary hearing, told him if he could not afford an attorney one would be appointed to represent him, and set bail at $10,000 without prejudice to a motion to reduce it at a later time.

It is our opinion that the courts did not err in denying defendant's motion to dismiss for lack of personal jurisdiction. Rather, it appears to us that, under the circumstances, the authorities acted with reasonable and practicable speed in bringing defendant before a magistrate. We realize

that it takes time for an investigation file to be made up and for the county attorney to review it. With Saturday and Sunday intervening between the time of defendant's arrest and the presentation of the police file on Monday to the county attorney's office, we cannot say there was an unreasonable delay.

■ The second attack on the court's jurisdiction is based on defendant's claim the complaint was defective because it was made, sworn to, and subscribed before a deputy clerk of the municipal court instead of a magistrate and because it did not state that the complainant had personal knowledge of the crime, and thus, according to defendant, there was no way for the examining officer to determine independently if there was probable cause to believe the accused guilty.

We agree that the complaint was defective under the rule of State ex rel. Duhn v. Tahash, *supra,* in that it was executed by a clerk of the municipal court instead of a magistrate. (That case was filed December 16, 1966, 7 months after defendant's arrest.)

However, while defendant did appear specially on several occasions to contest the jurisdiction of the trial court, we cannot see that on any of those occasions he based his claim of lack of jurisdiction upon the claim that the complaint was defective because it was signed before a clerk. On those occasions he apparently argued, among other points, that he had been improperly held for 3½ days before being taken before a magistrate; that he had been deprived of his right to counsel; and that there was no probable cause for his arrest. The first occasion on which improper execution of the complaint was asserted was by motion to be heard January 3, 1967. This was 7 months after the date of the arraignment, June 2, 1966, so it appears to us that the claim of lack of jurisdiction on that ground was waived when not made at or before arraignment. State ex rel. Duhn v. Tahash, *supra.* It cannot properly be claimed under the rule in Duhn, where it was held that the jurisdictional issue must be raised at or before arraignment, that the trial court was deprived of jurisdiction. While that case was filed December 16, 1966, and the defendant's motion was heard on January 3, 1967, the following cases were handed down before the defendant was arraigned on the charge of

robbery: Barnes v. Texas, 380 U. S. 253, 85 S. Ct. 942, 13 L. ed. (2d) 818; Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. (2d) 1503; Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723. We therefore hold that defendant has waived his right to question the propriety of the complaint. State ex rel. Duhn v. Tahash, *supra.* Similarly, on the record before us it does not appear that defendant asserted that the complaint against him had been issued upon the application of a complainant who did not state that he had personal knowledge of the crime. In the absence of timely objection, that claimed error must also be deemed to have been waived.

■ Defendant raises the question of whether he was deprived of a fair trial and due process of law when the court admitted a statement into evidence which he claims violated his constitutional rights. He made pretrial motions to suppress the statement, which was made to police officers on May 17 while en route to municipal court, claiming that the statement should have been held inadmissible because the same officers who had questioned him during the 3½ days before he was brought to court were again alone with him, and that the conversation in the car was merely a continuation of prior conversations. At the trial, Detective Pagel was allowed to testify about the conversation as follows:

"A. [Detective Pagel] He asked us a question.

"Q. And what question did he ask you?

"A. He asked where the money was.

"Q. And did either you or Detective Jahnke answer that question?

"A. Detective Jahnke answered the question.

"Q. And what answer did Detective Jahnke give?

"A. He said the money was down in the property room.

"Q. And was there any further conversation?

"A. Then the defendant said, $68 of that money is mine."

At the Rasmussen hearing it was determined that "the statement made by the defendant to Detectives Jahnke and Pagel enroute to the Ramsey County jail on May 17, 1966 was voluntary in nature and not the result of custodial interrogation and not otherwise obtained as a result of any

violation of the defendant's constitutional rights." The trial court adopted the conclusion and order made after the Rasmussen hearing concerning this statement. We hold that defendant was not deprived of a fair trial and due process by reception of Detective Pagel's testimony concerning the statement.

■ Defendant's fourth legal question as to whether he was deprived of a fair trial when the prosecution was permitted to introduce evidence which indicated a prior arrest or conviction raises a very critical and important issue. The county attorney, over objection, was permitted to elicit statements that one of the victims identified the defendant from so-called "mug shots." He also referred to the police photographs in both his opening and closing statements. Defendant claims that this was highly prejudicial—that it effectively told the jury that he had been either arrested or convicted before.

It is our opinion that the references to the police photographs in the prosecutor's statements to the jury were not necessary in the light of the very convincing identification testimony of eyewitnesses as well as other evidence. linking him to the crime.

The rule is well established that evidence that the accused has committed another crime unrelated and unconnected with the one for which he is on trial is inadmissible since it is not competent to prove one crime by proving another. State v. Wofford, 262 Minn. 112, 114 N. W. (2d) 267. Evidence in criminal cases which in any manner shows or tends to show that the accused has committed another crime independent of the one for which he is on trial is inadmissible (with exceptions). State v. Sweeney, 180 Minn. 450, 231 N. W. 225.

Under some circumstances we would order a new trial because of the admission of the so-called "mug shot" evidence and the references in the prosecutor's arguments to the police pictures. However, under the record here we consider it unnecessary. The evidence of defendant's guilt was so overwhelming that none of the irregularities claimed can be considered prejudicial error. He was identified even without the "mug shots." He had on his person at the time of his arrest evidence which was properly obtained and was admissible, including a check taken from the bar which

was robbed. Even though we disapprove of the admission of the testimony concerning identification from police pictures and the prosecutor's statements concerning this evidence, we must affirm under the record here.
    Affirmed.