**STATE of Minnesota, Respondent,**

v.

**Stephanie Ann GLIDDEN, Appellant.**

**No. C8–89–1019.**

Court of Appeals of Minnesota.

Aug. 14, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M. A. Johnson, Anoka County Atty., James J. Weber, Jr., M. Katherine Doty, Asst. County Attys., Anoka, for respondent.

Corey J. Ayling, O'Connor & Hannan, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and HUSPENI and SCHULTZ,* JJ.

OPINION

HUSPENI, Judge.

Upon conviction appellant Stephanie Ann Glidden's demand for a new trial was

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

granted on grounds other than those argued by appellant. *See State v. Glidden,* 451 N.W.2d 331 (Minn.App.1990). The supreme court reversed and remanded the case to this court for consideration of the issues raised on appeal. *See State v. Glidden,* 455 N.W.2d 744 (Minn.1990). We affirm.

## FACTS

The facts of this case have been set out in the prior opinions of both this court and the supreme court. *See State v. Glidden,* 451 N.W.2d 331, 331–33 (Minn.App.1990), *rev'd* 455 N.W.2d 744, 746 (Minn.1990).

## ISSUES

1. Was appellant improperly denied access to documents pertinent to her defense?

2. Was appellant denied a fair trial by the trial court's allowing the state to call a surprise handwriting expert?

3. Did the trial court's evidentiary rulings deny appellant a fair trial?

4. Was appellant improperly convicted based on circumstantial evidence?

## ANALYSIS

### I.

Appellant argues that the trial court's refusal to find a discovery violation and its quashing of her subpoena duces tecum denied her a fair trial. We disagree.

### A. STATE'S DISCLOSURE DUTY UNDER BRADY v. MARYLAND

■ The state's failure to disclose evidence "violates due process [only] where the evidence is *material* either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (emphasis added). For purposes of analysis, we assume *Brady* is applicable to the instant case.

In Minnesota, the *Brady* rule is embodied in Minn.R.Crim.P. 9.01, subd. 1(6). *See State v. Hathaway,* 379 N.W.2d 498, 506–07 (Minn.1985). Under that rule the prosecutor must disclose evidence "that tends to negate or reduce the guilt of the accused as to the offense charged." Minn.R. Crim.P. 9.01, subd. 1(6).

■ The Supreme Court has stated that the *Brady* rule applies in three quite different situations, but that in each there is no denial of a fair trial unless the undisclosed evidence is material. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). First, evidence demonstrating perjured testimony in the prosecutor's case, *id.,* 427 U.S. at 103, 96 S.Ct. at 2397, has not been alleged here. Second, specific evidence requested prior to trial, *id.,* 427 U.S. at 104, 96 S.Ct. at 2398, was not met by appellant's request for all the refund invoices, refund logs, journal tapes, deposit logs and personnel records generated by Menards in 1987 including those for dates upon which no theft was alleged. *Compare Brady,* 373 U.S. at 84, 83 S.Ct. at 1195.

Third, evidence may be requested as "all *Brady* material" or "anything exculpatory." *Agurs,* 427 U.S. at 107, 96 S.Ct. at 2399. A prosecutor is to disclose evidence if withholding it

> is of sufficient significance to result in the denial of the defendant's right to a fair trial.

> \* \* \* \* \* \*

> *The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.*

*Id.,* 427 U.S. at 108–10, 96 S.Ct. at 2400 (emphasis added). After explicitly stating that

> the judge should *not* order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless error standard,

*id.,* 427 S.Ct. at 111–12, 96 S.Ct. at 2401 (emphasis added), the Supreme Court held:

> if the omitted evidence creates a reasonable doubt [about the conviction] that did not otherwise exist, constitutional error has been committed. This means that

the omission must be evaluated in the context of the entire record.

*Id.*, 427 U.S. at 112, 96 S.Ct. at 2402 (footnote omitted).

In the context of the entire record, we cannot say that allowing appellant access to Menards' 1987 records would produce a reasonable doubt regarding appellant's conviction.[1] The identification of appellant's handwriting on the refund log would not change, nor would the evidence regarding the garage door opener. In a best case scenario for appellant, the records would show that other employees were consistently at work on the days the thefts took place and that missing refund invoices were not unusual. Arguments regarding another employee-thief and sloppy bookkeeping were made by defense counsel in his closing argument. The jury's verdict rejects these theories.

B. STATE'S DISCLOSURE OBLIGATION UNDER MINN.R.CRIM.P. 9.01, SUBD. 1

 Under the rules, the prosecutor must disclose documents about which he intends to offer evidence, including information possessed by others who have reported to his office. We reject the state's allegation that it had no duty to disclose because Menards did not report to the prosecutor. By turning the investigation of the *Glidden* case over to the police Menards "reported" to the state within the meaning of rule 9.01, subd. 1(7).[2] *See Glidden*, 455 N.W.2d 744 at 745 ("[Menards] conducted a

painstaking internal investigation"). However, we have stated that:

> due process does not require disclosure of everything that "might possibly influence a jury" [and] *[d]iscovery rules are not meant to be used for "fishing expeditions,"*

*State v. Hunter*, 349 N.W.2d 865, 866 (Minn.App.1984) (citations omitted) (emphasis added). Here, appellant had access to all documents in the state's possession, but requested a plethora of other documents generated by Menards in 1987. At a pretrial hearing, the trial court noted that these documents were in Menards' home office in Eau Claire, Wisconsin, that they were of considerable volume, and that the vast majority of these records did not involve the charged offenses. Appellant's request, especially in view of her access to all documents in the state's possession, strikes us as squarely within *Hunter's* prohibition on "fishing expeditions."

C. QUASHING OF SUBPOENA

Appellant maintains that the trial court's quashing of her subpoena duces tecum denied her rights to meaningful cross-examination and to compulsory process. We disagree.

1. *Cross-Examination*

 The Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) stated:

> The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any

---

**1.** Appellant's argument that lack of access to the contested documents hampered her ability to prepare for trial and make certain arguments has been rejected by the supreme court:

> First, that standard [for disclosure] would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge.

*Agurs*, 427 U.S. at 112 n. 20, 96 S.Ct. at 2401–02 n. 20.

**2.** Appellant cites *United States v. Kilroy*, 523 F.Supp. 206, 215 (E.D.Wis.1981), for the proposition that:

> Where [a] third party is a complaining witness cooperating with the prosecution, the prosecution is under a "best efforts" obligation to obtain from that third party documents responsive to the [d]efendant's discovery requests.

*Kilroy* is distinguishable. There the documents in question were those from the defendant's office. *Kilroy*, 523 F.Supp. at 215. Such documents are "obtained from or belong to the defendant" and therefore are explicitly discoverable under the Minnesota criminal rules. *See* Minn.R.Crim.P. 9.01, subd. 1(3).

and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.

\* \* \* \* \* \*

Because defense counsel was able to cross-examine all of the witnesses fully, we find that the Pennsylvania Supreme Court erred in holding that the failure to disclose the [contested documents] violated the Confrontation Clause.

*Ritchie,* 480 U.S. at 53–54, 107 S.Ct. at 999–1000. *See also id.* n. 9.

### 2. *Compulsory Process*

█ *Ritchie* concluded that "compulsory process provides no *greater* protections in this area than those afforded by due process." *Ritchie,* 480 U.S. at 56, 107 S.Ct. at 1001 (emphasis in original). It then cited *Brady* and *Agurs,* conducted a materiality analysis, and remanded for an in-camera inspection of the questioned evidence to determine whether it contained information that "probably would have changed the outcome of his trial." *Ritchie,* 480 U.S. at 57–58, 107 S.Ct. at 1001–02. Since we cannot say either that access to the documents would produce a "reasonable doubt" about the conviction or that appellant's discovery request does not constitute a "fishing expedition," we cannot conclude that discovery of documents relating to days when no theft is alleged to have taken place would "probably have changed the outcome of the trial." *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 868, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982).

## II.

█ While the prosecution's original witness list did not include a handwriting expert, appellant's did. However, appellant indicated that for confidential reasons she would not call her expert witness to testify. Two days before the scheduled beginning of trial, the prosecutor notified appellant's counsel that he had retained a handwriting expert as a rebuttal witness, but that "unless something unusual develops" he did not intend to call this witness in the state's case-in-chief.

In his opening statement, appellant's counsel said:

I want you to pay very close attention as to how the Prosecution attempts to identify handwriting, okay, and I want you to look at these exhibits when you go back to the jury room \* \* \*. You have to identify the handwriting in some kind of scientific way. *You are not going to see any positive scientific identification of handwriting in this case.*

\* \* \* \* \* \*

You listen to the testimony and you tell me if there has been a positive identification of handwriting in this case or if it's merely attempts at handwriting identification by lay witnesses. And you go back to that jury room and deliberate and you ask yourself, "Can I convict this woman without a positive identification of handwriting in a case involving falsified documents?"

(Emphasis added.) The prosecutor subsequently argued that defense counsel put handwriting in issue in his opening statement and therefore the prosecutor was justified in calling the handwriting expert during the case-in-chief. The trial court agreed with the prosecutor:

I think [defendant] made it a significant issue. As a matter of fact, when I was listening to [the] argument I thought [the prosecutor] may well be compelled to call whoever as a result of that. And I am permitting that.

The expert testified that she was certain beyond a reasonable doubt that handwriting on the questioned documents was appellant's. Appellant argues that "[the expert] was a surprise witness whose testimony deprived [appellant] of a fair trial."

The evidentiary rule regarding admission of expert testimony is liberal. *See* Minn.R. Evid. 702. Additionally:

the admission of an expert's opinion generally rests within the discretion of the trial court. A reviewing court will not

reverse a trial court's determination unless there is an apparent error.

\* \* \* \* \* \*

The basic consideration in admitting expert testimony under Minn.R.Evid. 702 is whether it will assist the jury in resolving the factual questions presented.

*State v. Myers*, 359 N.W.2d 604, 609 (Minn. 1984) (footnote omitted). The factual nature of handwriting identification, the argumentative nature of defense counsel's opening comments, and appellant's agreement that handwriting was of particular importance in this case support the trial court's conclusion that counsel's opening statement did "open the door" regarding handwriting. There was no abuse of discretion in allowing the expert to testify.

■ Appellant's argument that she suffered prejudice because "it [was not] possible on such short notice for defense counsel to retain a testifying expert," is without merit. In *State v. Carlson*, 328 N.W.2d 690, 695 (Minn.1982), when the state called an expert despite defendant's allegations of surprise and prejudice, the supreme court affirmed, noting that defendant was made aware of the expert as soon as practicable, and stating "If defendant was indeed surprised or prejudiced, the proper response would have been to move for a continuance." *Carlson*, 328 N.W.2d at 695. Here, defense counsel was informed of the possibility of an expert handwriting witness two days before the trial was scheduled to start and three days prior to its actual start. Additionally, when the trial court agreed to allow the expert's testimony, appellant, who had highlighted the importance of the handwriting issue, did not move for a continuance in order to address this important testimony.

## III.

■ Generally, "[r]ulings on evidentiary matters rest within the sound discretion of the trial court." *Caldwell v. State*, 347 N.W.2d 824, 826 (Minn.App.1984). Additionally,

A defendant claiming error in the trial court's reception of evidence has the burden of showing both the error and the prejudice resulting from the error \* \* \*. A reversal is warranted only when the error substantially influences the jury to convict.

*State v. Loebach*, 310 N.W.2d 58, 64 (Minn. 1981) (citation omitted).

## A. ALLEGED PLEA NEGOTIATIONS

■ At trial, two witnesses testified that appellant told them that she would first plead not guilty, let the case go to a jury trial, and if things went too far, she would then enter a plea. Appellant maintains that admission of the contested statements prejudiced her case because "The jury \* \* \* was likely to magnify the significance of these alleged off hand statements." We disagree.[3]

The statements admitted here are no more incriminating than the testimony in either *State v. Madison*, 281 Minn. 170, 160 N.W.2d 680 (1968), where appellant's statement that "$68 of that [seized money] is mine" was admitted and found not to violate due process or right to a fair trial, *id.* at 685, or *State v. Knowlton*, 383 N.W.2d 665 (Minn.1986), where defendant's friends' testimony regarding his confession of murder to them was found not to "shock the conscience." *Id.* at 669. We find no error in the trial court's admission of the challenged testimony here.

We also reject appellant's argument that the statements are inadmissible under Minn.R.Evid. 408 because they constitute offers to compromise. We believe such an exclusion under Rule 408 is inapplicable here. *See State v. Jackson*, 325 N.W.2d 819, 822 (Minn.1981). Further, appellant

---

3. Appellant cites *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and *State v. Goulette*, 258 N.W.2d 758 (Minn.1977) for the proposition that a party may plead guilty yet maintain their innocence. These cases deal with the trial court procedures necessary to assure the validity of such a plea. There is no

plea here. Appellant's statements cannot be construed as either a plea or offer to plea. *See State v. McBride*, 357 N.W.2d 395, 396–97 (Minn. App.1984) (defendant's post-*Miranda* statement to police officer that he would talk if the charge was reduced found not to be a plea bargain negotiation).

made her statements to persons who had no plea bargain authority.

## B. HEARSAY OBJECTION

■ At trial, a Menards' cashier testified that she bore no animosity toward appellant. A witness for appellant testified, however, that just before the cashier testified she (the cashier) said "I hope they nail her ass to the wall." In response to this testimony which tended to impeach the cashier, the prosecution called a rebuttal witness who testified that the statement attributed to the cashier was actually made by someone else. A hearsay objection to the rebuttal testimony was overruled.

We find no error. The challenged rebuttal testimony addressed not the truth of the statement "I hope they nail her ass to the wall," but merely identified a possible alternative source of the statement.

## C. CROSS–EXAMINATION REGARDING HANDWRITING

■ Appellant alleges that because Menards' office manager identified appellant's handwriting on questioned documents, he thereby purported to render a positive handwriting identification and was subject to the same cross-examination as an expert. We disagree.

With regard to the qualifications required of a lay witness in rendering an opinion regarding handwriting, McCormick states:

> [Generally] anyone familiar with the handwriting of a given person may supply authenticating testimony in the form of his opinion that a writing or signature is the handwriting of that person. Adequate familiarity may be present if the witness has seen the person write, or if he has seen writings *purporting* to be those of the person in question under circumstances indicating their genuineness.

McCormick, *Evidence*, § 221 at 690 (3rd ed.1984) (footnote omitted) (emphasis in original). Additionally,

> The scope of cross-examination is largely left to the discretion of the trial judge, whose ruling will not be overturned unless his discretion was clearly abused. *State v. Dille*, 258 N.W.2d 565, 569 (Minn. 1977). Given the minimal requirements necessary to render a lay opinion regarding handwriting, we cannot say that the trial court abused its discretion in refusing to permit cross-examination as an expert. Further, we note that defense counsel was allowed to fully cross-examine the state's actual handwriting expert.

## D. ALLEGED SPECULATION REGARDING GARAGE DOOR OPENER

■ Menards' office manager was asked how he "accounted for" the different color of the ink in which the return of the garage door opener was listed on the return invoice. Appellant's objection to lack of personal knowledge was overruled and the witness was permitted to describe a possible scenario in which appellant could have defrauded Menards. To the extent testimony purports to address what actually happened, it is impermissibly speculative. *See* Minn.R.Evid. 602 ("A witness may not testify to a matter unless * * * he has personal knowledge of the matter"). However, appellant herself concedes that admission of this testimony, by itself, does not merit a new trial and we find no reversible error.

## E. EVIDENCE OF APPELLANT'S SPENDING HABITS

■ Appellant alleges that the admission of "evidence regarding her spending habits likely distracted the jury from the real issues at hand and unfairly prejudiced [her]."

This allegation does not in itself constitute the proof of error and prejudice required by *Loebach*. *Id.*, 310 N.W.2d at 64. *See also State v. Snipe*, 304 N.W.2d 630, 631 (Minn.1981).

Evidence of appellant's financial difficulties and her consistent possession and use of a significant amount of cash could have been balanced in the opinion of the jury by evidence of appellant's habit of maintaining her paycheck proceeds as cash in her pos-

session rather than as a bank account and by evidence that appellant was not required to pay rent because she lived with family. Examination of all testimony received regarding appellant's spending habits causes us to conclude that the trial court did not abuse its discretion.

## IV.

■ Appellant argues that the circumstantial evidence in this case is consistent with conclusions other than her guilt and therefore she must be granted a new trial. These arguments were made to the jury and rejected. Additionally, crimes such as the one of which appellant was convicted involve altered records which are subsequently used to prove the existence and extent of the crime. The evidence obtained in connecting acts of appellant to such records is of necessity circumstantial. Adoption of appellant's argument would virtually eliminate the ability to prove the offense charged. Further, while the scenarios suggested by appellant may be "logical possibilities," our review of the evidence in this case convinces us that these scenarios cannot be deemed "rational hypotheses." *See State v. Webb,* 440 N.W.2d 426 (Minn.1989).

Finally, appellant's argument appears to be based on the presumption that "[t]he most powerful evidence in this case was the two suspicious refund invoices executed in December 1987." This is speculation regarding what the jury found to be persuasive evidence. Arguably, the jury may have been persuaded by the testimony that appellant's handwriting appeared on the refund invoice log for all questioned transactions.

## DECISION

The state did not violate its discovery obligations and the trial court did not abuse its discretion in admitting the testimony of the state's handwriting expert; any error in evidentiary rulings was not sufficiently prejudicial to require a new trial. Because the evidence was otherwise sufficient to sustain appellant's conviction, we affirm.

Affirmed.