**STATE of Minnesota, Appellant,**

v.

**Janice Marie DANIELSKI, Respondent,**

**and**

**STATE of Minnesota, Appellant,**

v.

**Dean Anthony DANIELSKI, Respondent.**

**Nos. C2–83–1861, C9–83–1856.**

Court of Appeals of Minnesota.

April 24, 1984.

Review Denied July 26, 1984.

Cynthia E. Ostlie, Asst. Polk County Atty., Crookston, for appellant.

James Beuning, Mahnomen, for respondent Janice Marie Danielski.

Paul A. Kief, Bemidji, for respondent Dean Anthony Danielski.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal by the state from a Polk County District Court Order dismissing complaints of two counts of first degree criminal sexual conduct against each of two defendants as barred by the three-year statute of limitations. We reverse.

## FACTS

Defendants, Dean Anthony Danielski and Janice Marie Danielski, were each charged on August 26, 1983, with two counts of first degree criminal sexual conduct, all arising out of an incident occurring in July 1980.

The victim is the daughter of Janice and stepdaughter of Dean. The child's sworn statements indicate abuse by Dean began in 1976 when she was nine years old and occurred two to three times each week when her mother was at work. The abuse initially involved Dean undressing the child, manipulating and touching her breasts and genitals, and inserting his fingers and tongue in her vagina. When the child was eleven, Dean forced her to suck his penis. At age fourteen he engaged in intercourse with her.

The victim remembers particular occurrences because of the significance of the date. For example, she remembers that certain abuse occurred when Dean lived with her mother prior to their marriage,

when they moved to a trailer home after their marriage, on her birthday, the beginning of school, upon coming home from the hospital following a tonsillectomy, on a summer trip, on her graduation, etc.

The victim repeatedly told her mother of Dean's sexual abuse. The mother took no action to end the abuse.

In July 1980, the child was forced to perform acts of sexual contact and penetration with both Janice and Dean. While watching television one Saturday, Dean and Janice brought out a box containing sexual devices, including a dildo, a vibrator and massager. Dean and Janice removed all of their clothing. Dean directed the victim to insert the dildo and vibrator in her mother's vagina while forcing his penis into the child's mouth. The mother watched. The abuse continued after this date.

The victim told her boyfriend who told his family. The victim indicated to doctors following attempts at suicide: "I did it because of Dean." No one in whom the victim confided knew what to do, or felt that anything could be done. Dean frequently grounded her and denied her phone privileges after he abused her. After he had sexually abused her following her tonsillectomy, she called her boyfriend and told him. Dean punished her by preventing her use of the phone for a period of time.

In the summer of 1983, when the victim was 16, she went camping with her mother and brothers. Dean came to the campground, entered the trailer when the victim was alone, and began fondling her and asked her to have sexual intercourse with him. She got away and went to the bathroom where she cut her wrists "because I couldn't stand it any longer."

Following this episode, she visited her natural father and his wife and told her stepmother of the abuse. The stepmother told the girl's father, who immediately called the authorities and had the victim file statements with the police. The statements were made on Friday, July 29, 1983; an investigation was conducted and com-

plaints filed against defendants on August 26, 1983, 26 days after the three-year period prescribed in the statute of limitations.

## ISSUE

Does the statute of limitations begin to run where adults in a position of authority over children use that authority to both coerce sexual acts and prevent the child from reporting the crime after the acts?

## ANALYSIS

The victim's mother and stepfather are charged pursuant to Minn.Stat. Sec. 609.342(b) (1980). There are four elements to the crime charged:

1) The defendant did feloniously and unlawfully engage in sexual penetration with another person,

2) when the victim was at least 13 but less than 16 years of age and when defendant was more than 48 months older than the victim,

3) defendant was in a position of authority over the victim, and

4) defendant used that authority to coerce the victim to submit.

The trial court dismissed the complaints on the basis that each act of sexual contact or intercourse was complete when the act was done, and therefore the statute of limitations had run on August 1, 1983, three years after the July 1980 sex acts.

The limitations set forth in Minn.Stat. Sec. 628.26 (1980) are:

## LIMITATIONS

Indictments for murder may be found at any time after the death of the person killed; indictments for violation of section 609.42, subdivision 1, clauses (1) or (2) [bribery statute] shall be found and filed in the proper court within six years after the commission of the offense; *in all other cases, indictments shall be found and filed* in the proper court *within three years* after the commission of the offense; but the time during which the defendant shall not be an inhabitant of, or usually resident within, this state,

shall not constitute any part of the limitations imposed by this section.

(Emphasis added.)

In *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), the Supreme Court answered the question of when the statute of limitations begins to run by considering the purposes served by the limitation, the nature of the crime and the legislative intent. The following general principles were discussed:

In deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The *purpose* of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to *protect individuals* from having to defend themselves against charges *when* the basic *facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in* the *far-distant past.* Such a time limit may also have the salutary effect of *encouraging* law enforcement *officials promptly to investigate* suspected criminal activity. For these reasons and others we have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" We have also said that *"[s]tatutes of limitations normally begin to run when the crime is complete."* And Congress has declared a policy that the statute of limitations should not be extended "[e]xcept as otherwise expressly provided by law." These principles indicate that the doctrine of continuing offenses should be applied in only limited circumstances . . . .

*Id.* 397 U.S. at 115–16, 90 S.Ct. at 860 (cites omitted) (emphasis added). The court acknowledged that whether a particular criminal offense is a continuing offense is a question of statutory interpretation. The court applied these principles and concluded that Toussie's failure to register at age 18 was not a continuing offense which would extend the five year statute of limitations. The general rules discussed were:

1) That criminal limitations statutes are to be liberally interpreted in favor of repose

2) Where a criminal statute of limitations sets a specific limited period for a particular class of crimes, the particular offense should not be construed as a continuing one "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *See id.* at 116, 90 S.Ct. at 861.

Applying the *Toussie* court's considerations to Minn.Stat. § 609.342 (1980) it is apparent that each of the four elements is a substantive component of the crime, but that one of the elements, engaging in sexual penetration, is complete when the act is complete. Elements three and four are unique to this particular crime of criminal sexual conduct in the first degree and neither the defendant's position of authority over the victim, nor his coercive use of that authority necessarily cease with the sex act.

■ The criminal sexual conduct statute punishes not only the sexual abuse of the child but also the use of authority to coerce the child to submit to the sexual act. Here the child was abused continuously from the early age of 9 until the age of 16. Although the victim told her mother, this was insufficient to get official involvement. The mother herself, together with the stepfather, abused the daughter. The reason the abusive conduct was not brought to the prosecuting authority was the active coercion used by defendants against the victim. Dean's threats against her if she used the phone and punishment for using it, coupled with the mother's total disregard of Dean's activities against her daughter and active participation with him in the July 1980 abuse of the then 13 year-old child constituted use of authority to cause the victim

to submit to the sexual abuse; an essential element of the crime charged.

The parents were able to maintain sufficient control over their daughter to prevent outside intervention for eight years. The parents' success in maintaining this control over the victim should not bar the state's subsequent prosecution. The purpose of this particular statute—penalizing those who use their authority to sexually abuse young children—would be completely thwarted by permitting defendants to prevent reporting of the act while taking advantage of the statute of limitations.

■ Another important purpose of the statute of limitations is to protect a defendant from having to defend himself against stale charges. Here, the complaints were brought 26 days after the 3-year statute had run. The delay was caused, not by the failure of officials to promptly investigate the suspected criminal activity, but by the defendants' control of the child. The officers investigated the information they received on July 29 and brought charges against defendants on August 26.

■ In addition, the *Toussie* court states that the "statutes of limitations normally begin to run when the crime is complete." *Id.* However, the balancing test used in *State v. Lawrence*, 312 N.W.2d 251 (Minn. 1981), supports the view that the statute of limitations should not be applied in this case. The purpose of the criminal statute on sexual conduct in the first degree is to prosecute persons who use their position of authority as a parent to coerce a child to submit to an act of sexual penetration.

The crime of sexual conduct in the first degree includes two unique elements, that defendant (1) be in a position of authority over the victim and (2) uses that authority to coerce the victim to submit. Here, these elements continued after the individual acts of unlawful penetration. All elements must be met to constitute the crime, the coercion by one in authority and the penetration. Although the trial court properly recognized that each act of penetration constituted a separate offense, it failed to rec-

ognize that the coercion was ongoing, and the offense was continuing.

A fair reading of the second general rule in *Toussie* applied to the instant case is that two of the four elements of the offense defendants are charged with compel the conclusion that so long as parental authority which caused the commission of the act continues the offense continues.

■ A principle concern of the *Toussie* court, and of the dissenting judges in *Lawrence*, was the prejudice to defendant of stale claims. This argument in favor of strict application of the statute of limitations does not apply when defendants' actions are the direct cause of the delay.

The following Minnesota cases have fact situations parallel to the instant case, where following the commission of the act constituting the crime, the defendant's actions prevented either discovery of or prosecution of the offense.

In *State v. Tahash*, 280 Minn. 507, 160 N.W.2d 139 (1968), the defendant testified that he left his family in Warroad, Minnesota, in February 1959, with intent to abandon them and that he thereafter contributed nothing to their support for 4 years and 8 months, until charged with child abandonment. The court held:

> The crime of child abandonment or dessertion is generally recognized as a continuing offense. The offense is committed not by any overt act but by omission or neglect, and the offense continues so long as the neglect continues without excuse.

*Id.* 280 Minn. at 509, 160 N.W.2d at 141.

Another early Minnesota case also puts a priority on society's interest in deterring crimes that can be concealed over society's interest in protecting persons from stale claims. In *State v. Thang*, 188 Minn. 224, 246 N.W. 891 (1933), defendant was guardian of an estate. He did not deny his liability for a missing $1,000 belonging to the estate. The court held that although the wrong (embezzlement) took place in 1926, it was carried along through 1928 when the account was settled by probate court. In

1930, upon demand of defendant for the $1,000, he admitted it was gone. Under these facts the statute of limitations did not run until the court's discovery of the crime.

In *State v. Lawrence*, 312 N.W.2d 251 (Minn.1981), the court found no definitive answer in the statute to the question of whether or not the offense was continuing, so it used a balancing test, "balancing society's interest in protecting persons from stale claims with society's interest in deterring theft and trafficking in stolen goods." *Id.* at 254. The court acknowledged that "concealing" stolen property could be a single act, for example, putting property in a secret place and leaving it there, but elected not to construe the term in so limited a fashion. The court held that either concealing or possessing stolen goods is a continuing offense for the purposes of the statute of limitations.

> We hold this defendant may not assert the statute of limitations as a bar where he kept the goods he stole in his house and garage, thereby not only possessing the goods but making their discovery more difficult for the owner.

*Id.* at 253–254.

*State v. Tahash, State v. Lawrence, State v. Thang* are all cases where the defendants prevented discovery of the offense. The continuing nature of the offenses was determined by a defendant's actions in continuing child abandonment, of making discovery of stolen property more difficult for the owner by concealing it, and by saying nothing about the fact that $1,000 was missing from the estate for four years.

The Danielskis' acts in maintaining continuing coercive control over the victim prevented reporting of the acts, and made the offense a continuing one. The victim remained under the coercive authority of Janice and Dean until she was sixteen and went to stay with her natural father. Once out of this coercive and abusive environment she promptly reported the abuse to someone who was concerned and acted to bring about a police investigation of the abuse. This investigation led almost immediately to the filing of these complaints.

## DECISION

Where the same parental authority that is used to accomplish criminal sexual acts against a child is used to prevent the reporting of that act, the statute of limitations does not begin to run until the child is no longer subject to that authority. We reverse with directions to reinstate the criminal complaints filed on August 26, 1983 against Dean Anthony Danielski and Janice Marie Danielski and to proceed with prosecution on the acts alleged to have been committed in July 1980. Reversed and remanded for trial.