**STATE of Minnesota, Appellant,**

v.

**Daniel Charles FRENCH, Respondent.**

**No. CX–86–326.**

Court of Appeals of Minnesota.

Aug. 26, 1986.

Hubert H. Humphrey, III, State Atty. Gen., Joseph F. Wieners, Dodge Co. Atty., Kasson, for appellant.

Terrence M. Walters, Rochester, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Defendant Daniel Charles French was charged on July 26, 1985 with ten counts of criminal sexual conduct and intrafamilial sexual abuse based on incidents of sexual abuse which were reported to have occurred before and until late 1978. Defendant moved to dismiss the complaints on the grounds that the prosecution was barred by the statute of limitations, Minn.Stat. § 628.26 (1978). The State argued that the three-year statute of limitations had been tolled by defendant's coercive use of his authority over the complainant which prevented her from reporting the incidents. The trial court agreed with defendant and held that the statute of limitations barred the prosecution of the complaints and that the statute of limitations was not tolled because defendant had not actively coerced the complainant so as to prevent her reporting of the incidents to authorities. We affirm.

## FACTS

In 1985, the Dodge County Sheriff's Department was informed that complainant was sexually abused by defendant, her uncle, before and up until late 1978. The sheriff's department was informed that the

matter was being dealt with privately by the elders of the church where defendant was also an elder. Complainant and her parents also belonged to this church, and several of the incidents of abuse were reported to have occurred in the church at a time when complainant was attending Wednesday evening religious instruction classes under defendant's supervision.

After several months of investigation, the sheriff's department decided on July 26, 1985 to recommend charging defendant with ten counts of criminal sexual abuse and intrafamilial sexual abuse, seven years after the last reported incident occurred.

Complainant explained that she had not reported the incidents earlier because she was afraid her parents would not believe her, because defendant had told her that no one would believe her since he was respected in the church and community, and because she was ashamed and embarrassed.

Up until her marriage in June 1983, the complainant resided with her parents. Defendant had no control over her day-to-day life. Defendant and complainant's father were partners in a farming operation, and defendant resided on a farm five miles from complainant's home. The last incident of sexual abuse was reported to have occurred in late 1978 when defendant was teaching complainant in evening religious instruction classes which complainant's parents required her to attend. Other incidents of abuse were reported to have occurred in complainant's home and in defendant's barn.

Although the two families had contact at church, on defendant's farm and on social occasions, complainant testified that after the last incident in late 1978, she rarely spoke with defendant except to say "Hi". It had been over seven years since defendant last provided religious instruction to complainant when the charges were filed.

## ISSUE

Did defendant engage in active coercion that prevented complainant from reporting incidents of sexual abuse, therefore justifying tolling of the statute of limitations?

## ANALYSIS

Although the charge here is an egregious one, the only issue before us on appeal is whether the three-year statute of limitations, Minn.Stat. § 628.26 (1978),[1] was tolled because of the rule stated in *State v. Danielski*, 348 N.W.2d 352 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. July 26, 1984). In *Danielski* this court held that:

> Where the same parental authority that is used to accomplish criminal sexual acts against a child is used to prevent the reporting of that act, the statute of limitations does not begin to run until the child is no longer subject to that authority.

*Id.* at 357. The state argues that a similar coercive atmosphere existed here because of defendant's status and position as the complainant's uncle and church elder and that this coercion prevented the victim from reporting the abuse until after she was married.

In *Danielski*, the complainant was sexually abused by her stepfather with whom she lived. He helped direct her daily life, disciplining her by withholding telephone privileges and grounding her. When the victim told her boyfriend of the abuse, she was disciplined. Although the victim told her mother of the abuse, the mother was a participant in the abuse and did not attempt to limit, stop or report the abuse. The victim told other friends, but they did not know what to do, and the abuse went unreported until the victim was out of the coercive environment and in the home of her natural father and his wife. The victim reported the abuse, which had occurred continuously from age 9 to 16, to her stepmother, who told the victim's father. The authorities were contacted, an investigation promptly begun and the complaints filed

1. The parties agree that the amendment of Minn. Stat. § 628.26 in 1982, which extended the statute of limitations, did not affect these proceedings which involve charges based on incidents reported to have occurred in 1978.

only 26 days after the statute of limitations had run.

■ Here, the trial court found that the circumstances of coercion did not parallel those of *Danielski:*

In the present case, the fact that the defendant was an elder in the church, as well as [complainant's] uncle and teacher, shows that defendant was "in a position of authority" over [complainant]. However, these facts do not show that he "actively coerced" her not to report the incidents of abuse within the meaning of *Danielski.* A minimum showing of a similar position of authority characterizes every instance of intrafamilial sexual abuse. The defendant did not have the additional authority to control [complainant's] day-to-day movements or communications. [Complainant] did not reside with defendant. She was in his custody only during his "religious instruction" classes, and these classes ceased after 1978. Moreover, the defendant's warnings to [complainant] that no one would believe her if she reported the incidents were also typical of intrafamilial abuse. The defendant did not add threats of physical harm or other punishment which might have constituted "active coercion." And finally, we believe that the defendant's moodiness and abusive behavior towards his own children did not cause defendant's behavior to constitute "active coercion." Sexual abuse is in the nature of a violent physical assault. Any victim of intrafamilial abuse is likely to view the perpetrator as unpredictable and threatening. We must conclude that the defendant did not engage in active coercion against [complainant] at any time after 1978. Therefore the three-year limitations applied and had run by the time the complaint had been filed.

The record also shows that the complainant alleged psychological coercion based on church sermons about respecting elders and on defendant's unpredictable temperament. Although the case may come where psychological coercion, rather than physical coercion, constitutes "active coercion" under *Danielski,* the record does not establish that such coercion existed here. As the trial court noted, complainant's contact with defendant after the reported incidents of abuse was very limited. The record shows she was able to avoid isolated contact with defendant despite the relationship of the families and the partnership her father had with the defendant in a farming operation.

■ The trial court also noted that although the complainant had reported to her school counselor in 1981 that her uncle had been sexually inappropriate with her and this counselor failed to notify the appropriate authorities as required by Minn. Stat. § 626.556, subd. 3 (1980), this reporting would not have caused the statute of limitations to start running even if active coercion existed, because under *Danielski,* the victim must tell someone who actually brings the information to the proper authorities before the statute runs. *See Danielski* at 357. We agree with this interpretation of *Danielski.* However, we must comment that the decision of complainant and her family to inform a public body—their church congregation—and try to deal with the matter privately "for some period of time" shows that any active coercion which might have previously prevented reporting no longer existed after the incidents became public.

In addition to the factors noted by the trial court in its analysis and application of *Danielski,* we note that in *Danielski* the charges were brought only 26 days after the three-year statute of limitations had run. *Id.* at 356. Here, charges were brought seven years after the last incident allegedly occurred. Also, in *Danielski,* the abuse continued until the reporting because of the defendant's ongoing threats and use of coercion. *Id.* at 356–57. Here, the trial court found that any active coercion used to accomplish the reported crimes ceased to exist approximately seven years before the charges were brought.

## DECISION

The trial court ruling that the statute of limitations was not tolled here under the

rule of *Danielski* is supported by the court's findings and those findings are supported by the record.

Affirmed..