STATE of Minnesota, Respondent,

v.

William R. SHAMP, Appellant.

No. C0–87–1494.

Court of Appeals of Minnesota.

April 19, 1988.

Review Granted June 10, 1988.

Hubert H. Humphrey, III, Atty. Gen., William F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Michael Kirk, Otter Tail County Atty., Fergus Falls, for respondent.

C. Paul Jones, State Public Defender, Melissa Sheridan, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and HUSPENI and SCHUMACHER, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

An Otter Tail County jury convicted appellant on one count of criminal sexual conduct on February 25, 1987, in connection with the sexual abuse of his sister. Appellant argues on appeal that the trial court erred when it failed to caution the jury that acts occurring outside of the stat-ute of limitations period could not be considered as part of multiple acts of abuse for purposes of Minn.Stat. § 609.342, subd. 1(h)(v). We reverse and remand for a new trial.

## FACTS

On July 24, 1986, a complaint was filed in Otter Tail County charging appellant, William Romain Shamp (D.O.B. 11/04/52), with one count of criminal sexual conduct in the first degree, in violation of Minn. Stat. § 609.342, subd. 1(h)(v) (1985). Appellant allegedly engaged in numerous acts of sex with his sister, S.M.S., (D.O.B. 12/29/71) between 1978 and June 29, 1986. The incidents occurred on or near the farm outside of Parkers Prairie where S.M.S. lived with her parents. Appellant lived with his wife and children near the Twin Cities. At the beginning of the trial, appellant moved to dismiss the complaint on the ground that it charged him with crimes, the prosecution of which was barred by the statute of limitations. The trial court denied the motion at the time but noted:

> In the event that the evidence does develop that perhaps some of these multiple acts may have occurred prior—or outside of the statute, then I think that that can be taken care of with a cautionary instruction.

No such instruction was given at the close of trial.

According to the testimony of S.M.S., appellant visited the farm "about every weekend." Appellant's sexual contact with S.M.S. began when she was "about seven," in either 1978 or 1979. At first, appellant made S.M.S. feel his penis. When she was approximately eight and one-half years old, appellant began forcing her to perform oral sex on him. When she was eleven, appellant began engaging in intercourse with S.M.S. These incidents occurred "more [times] than [S.M.S.] could count." Appellant would also feel S.M.S.'s breasts and rub her all over.

In addition to the first time appellant engaged in sexual activity with her, S.M.S. recounted two other specific occasions of abuse. One incident occurred when appel-

lant was hunting in the woods near the family farm. This incident took place in 1985. S.M.S. was walking through the woods when she saw appellant. He forced her to the ground and pulled her pants down. He then pulled a bullet out of his pocket and placed it in her vagina.

The other incident for which specific testimony was presented occurred in June of 1986. This incident took place in the milk house on the farm. Appellant attempted to pull S.M.S.'s pants down and have intercourse with her. However, he was interrupted when another sister walked in on them. In his defense, appellant presented testimony which indicated that he was not at the farm at any time during June of 1986.

At trial, the court admitted into evidence the testimony of appellant's daughter, M.M.S., regarding incidents of sexual abuse between her and appellant. M.M.S. is one year younger than S.M.S. Appellant had been previously convicted for criminal sexual conduct based on these incidents. Appellant began sexually abusing M.M.S. when she was approximately seven years old (about the same age S.M.S. was when appellant began sexually abusing her).

The trial court also allowed evidence regarding a statement appellant made following his arrest in July of 1986. Appellant made the statement while being interviewed in the Anoka County jail. According to Detective Kangas, appellant responded "yep" when asked whether he had engaged in sexual intercourse with S.M.S. When asked if he ever had sexual intercourse with S.M.S. in the milk house on the farm, appellant replied; "If she [S.M.S.] said that, I suppose I did." Appellant alleges that Detective Kangas told him that if he pleaded guilty, he would simply have to go to counseling and therapy. In addition, appellant alleges that the testimony Kangas gave at appellant's trial on charges of sexually abusing his daughter indicate that the statement was a product of coercion.

## ISSUES

1. Did the trial court err in not dismissing the complaint?

2. Did the trial court err in admitting evidence of appellant's sexual abuse of his daughter as *Spreigl* evidence?

3. Did the trial court err in admitting into evidence appellant's post-arrest statement?

## ANALYSIS

### I.

The complaint against appellant alleged that he engaged in sexual activity with S.M.S. between 1978 and 1986. The trial court instructed the jury that one element of the charge was that the acts "took place between the year 1978 through June 29, 1986." Appellant argues that the statute of limitations for acts occurring between 1978 and 1982 had expired by the time the complaint was filed in July of 1986 and that reversible error was committed in failing to caution the jury not to convict appellant on the basis of any activity occurring before 1982.

■ Minn.Stat. § 609.342, subd. 1(h)(v), involves (1) an actor who has a significant relationship to the complainant, (2) a complainant who is under the age of 16, and (3) sexual abuse involving *multiple acts committed over an extended period of time.* *Id.* The statute of limitations period for violations of Minn.Stat. § 609.342, where the victim is under the age of 18 years (previously where the actor and the victim were in a familial relationship), is currently seven years. *See* Minn.Stat. § 628.26(c). Prior to 1982, the limitations period was three years. The 1982 amendment to the statute which extended the limitations period to seven years limited its application to acts occurring "on or after August 1, 1982." *See* 1982 Minn.Laws ch. 432, § 2. Thus the time to initiate prosecution for any act occurring before that date was within three years of the alleged occurrence of the crime.

The state contends the 1984 amendment to section 628.26 (*see* 1984 Minn.Laws ch. 496, § 1) did not specifically limit application of the seven year limitations period to

offenses committed after August of 1982 and, therefore, the seven year statutory period applies retroactively. A recent decision of the Minnesota Supreme Court clearly rejects any such argument. *See State v. Traczyk*, 421 N.W.2d 299 (Minn.1988), *pet. for rehearing filed* (Minn. April 3, 1988). The *Traczyk* decision reaffirms that "before a statute will be afforded retroactive application, there must be clear evidence that the legislature intended retroactive application." 421 N.W.2d 300, quoting *Duluth Fireman's Relief Ass'n v. City of Duluth*, 361 N.W.2d 381, 385 (Minn.1985). Therefore, the three year statute of limitations period was applicable to all offenses occurring before August 1, 1982, and prosecution of such offenses is barred unless commenced, at the latest, by August 1, 1985. The complaint in this case was not filed until 1986.

■ In light of this, the question remains: what effect does the trial court's failure to instruct the jury not to convict appellant on the basis of any act occurring before August 1, 1982, have on the appellant's conviction? An analogous case is *State v. Anderson*, 394 N.W.2d 813 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986). In *Anderson*, the defendant was charged with a violation of Minn. Stat. § 609.3641, subd. 1(2)(e). As is required by section 609.342, subd. 1(h)(v), Minn.Stat. § 609.3641, subd. 1(2)(e) requires multiple acts of sexual abuse which occur over an extended period of time. Much of the testimony at Anderson's trial "related to acts allegedly occurring when [defendant] was between the ages of ten and seventeen." *Anderson*, 394 N.W.2d at 815. Prosecution of some of the acts the testimony showed Anderson committed would have been barred by Minn.Stat. § 609.055 (1984) (prohibiting conviction for acts occurring while an accused was under the age of fourteen). The court stated:

Although the majority of the acts allegedly occurred after [Anderson] reached the age of fourteen, it is impossible to determine whether the jury in reaching its decision may have considered acts allegedly occurring before that time. As a result, we cannot determine that convic-

tion for this multiple-act crime was based only on acts occurring after appellant became fourteen years of age.

*Id.* at 816. Therefore, the court reversed Anderson's conviction. We can find no basis on which to distinguish this case from *Anderson*. Therefore, we believe a similar result is called for in this case.

The evidence presented at appellant's trial related to acts occurring between 1978 and June of 1986. While S.M.S. testified that the sexual abuse occurred more times than she could count, only three specific instances of abuse were described. The first of these, having occurred well outside of the statute of limitations period, should not have been considered by the jury for purposes of finding "multiple acts" of abuse. Another of these, the one alleged to have occurred in June of 1986, was refuted by direct testimony by appellant's parents that he was not at the farm during that time. It is possible the jury disbelieved such testimony. However, it is equally possible the jury had a reasonable doubt as to whether appellant was at the farm during June of 1986, but still convicted appellant on the basis of the two other instances of misconduct for which specific testimony was presented. As it cannot be said with certainty that the jury did not base its finding of guilt partially on the 1978 or 1979 incident, we hold that the court's failure to give a cautionary instruction was reversible error.

■ Respondent argues the statute of limitations was tolled under the theory of *State v. Danielski*, 348 N.W.2d 352 (Minn. Ct.App.1984), *pet. for rev. denied* (Minn. July 28, 1984). In *Danielski*, the court stated:

Where the same * * * authority that is used to accomplish criminal sexual acts against a child is used to prevent the reporting of that act, the statute of limitations does not begin to run until the child is no longer subject to that authority.

*Id.* at 357.

In this case, S.M.S. testified that appellant, on several occasions, threatened her,

sometimes even using a weapon. The state relies on the fact that appellant visited the farm frequently and that S.M.S.'s parents were unsupportive of her to argue the statute of limitations was tolled. However, in *State v. French*, 392 N.W.2d 596 (Minn.Ct.App.1986), we held that where a person did not control the complainant's day-to-day movements and did not reside with complainant, the statute of limitations was not tolled. *Id.* at 599. As appellant did not live with S.M.S., and as his visits to her home were primarily weekend ones, we believe that the circumstances here are similar to those in *French* and that the holding in that case must apply here also.

## II.

■ Because two additional issues raised by appellant will likely be brought up again at a new trial, we will address them at this time. First, appellant argues the trial court erred in admitting evidence of incidents of sexual abuse involving himself and his daughter, M.M.S.

In order for evidence of other crimes or bad acts to be admissible,

> the trial court must determine that there is "clear and convincing" evidence that the defendant participated in the crimes or bad acts sought to be admitted. * * * The court must also determine that the evidence of prior crimes or bad acts is "relevant and material to the state's case." * * * In addition, it must rule that the probative value of the evidence outweighs any potential for "unfair prejudice."

*State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986) (citations omitted).

A plethora of cases support the admission of prior instances of misconduct in this case. In *State v. Haala*, 415 N.W.2d 69 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987), the defendant was convicted of sexually abusing his daughter. At trial, the court admitted evidence concerning defendant's prior conviction for sexually abusing his stepdaughter. This court upheld the conviction and held that the testimony concerning the prior act was not an abuse of discretion. *Id.* at 79. The

court noted that the victims in both incidents "were not the same but very similar in age, sex, and relationship to [defendant]." *Id.* at 77. In this case, the victims were similar in age and sex. While the relationship to appellant was not the same, one his daughter and one his youngest sister, the relationships are arguably similar.

In *State v. McCoy*, 400 N.W.2d 807 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987), the defendant was charged with the sexual assault of his twelve-year-old daughter. The trial court admitted evidence that he had previously assaulted the victim's aunt twice when the aunt was nine years old and again when she was twelve. This court upheld the trial court's decision, noting that the *Spreigl* evidence showed a "consistent modus operandi," in that the abuse of both victims occurred when defendant's wife was out of the home and were repeated when defendant had the opportunity. *Id.* at 810. In this case, the *Spreigl* evidence involved not the aunt but the niece. It occurred when the victims were similar in age and took place when appellant had the opportunity. We believe the evidence in question could have been admitted to establish a consistent modus operandi.

Finally, we believe the evidence could have been admitted as it established a common scheme under Minn.R.Evid. 404(b). *See State v. Spencer*, 366 N.W.2d 656 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985); *State v. Danielski*.

## III.

The final issue is whether the trial court acted properly in admitting appellant's inculpatory statement. We believe that it did.

■ In cases in which the claim is made that a confession is involuntary or that the waiver of *Miranda* rights was involuntary, the trial court must make a subjective factual inquiry into all the circumstances surrounding the giving of the statement. On appeal, this court will not reverse any findings of fact unless they are

clearly in error, but this court will make an independent determination of voluntariness on the facts as found. *State v. Hardimon,* 310 N.W.2d 564, 567 (Minn.1981). Appellant claims Detective Kangas told him if he pleaded guilty he would be put on probation and sent to counseling. The detective denied he ever made any promises to appellant and there is nothing to support appellant's claim. Even if, as appellant claims, Detective Kangas (1) told him that he felt appellant "had a problem," (2) told appellant that he did not know whether his daughter loved him, and (3) became irritated at appellant for not "answering his questions the way he wanted them answered," we believe the confession would not automatically be rendered inadmissible.

"[T]he trustworthiness of a confession should not in every instance be discounted because investigative officers * * * in their interviews might have made discursive or imprecise statements to the defendant." *State v. Biron,* 266 Minn. 272, 282, 123 N.W.2d 392, 399 (1963); *State v. Orscanin,* 283 N.W.2d 897, 900–01 (Minn.1979), *cert. denied* 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed. 2d 385 (1979). Further, "the police must also be allowed to encourage suspects to talk where the suspect has not clearly refused." *State v. Merrill,* 274 N.W.2d 99, 108 (Minn.1978). There is nothing in the record to indicate that Detective Kangas did anything more than encourage appellant to talk in light of the fact that he did not clearly invoke his *Miranda* rights. Appellant's claim that Detective Kangas told him that he would only have to go to counseling if he confessed is a factual determination for the trial court to make. We do not believe the trial court erred in choosing to disbelieve appellant.

## DECISION

The trial court erred in failing to caution the jury that it was not to convict appellant for any acts which occurred prior to August 1, 1982. On remand, the trial court may admit evidence of appellant's sexual misconduct with his daughter as well as appellant's post-arrest statement to Detective Kangas.

Reversed and remanded.