STATE of Minnesota, Respondent,

v.

Stephanie Ann GLIDDEN, Appellant.

No. C8–89–1019.

Court of Appeals of Minnesota.

Feb. 13, 1990.

Review Granted April 13, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., M. Katherine Doty, James J. Weber, Jr., Asst. County Attys., Anoka, for respondent.

Corey J. Ayling, O'Connor & Hannan, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., HUSPENI and STONE, JJ.*

OPINION

NORTON, Judge.

Appellant Stephanie Ann Glidden was convicted of theft of property with an aggregate value exceeding $2,500 after the jury had been explicitly directed to consider evidence spanning an eleven and one-half month period. Because the statute allowing aggregation to reach the $2,500 threshold limits the aggregation period to six months, appellant's conviction must be reversed.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

Under Minn.Stat. § 609.52, subd. 3(7) (1988) the period of time over which the value of stolen property may be aggregated in order to meet the statutory thresholds is limited to six months. In this case, however, the complaint against appellant charged her with theft exceeding $2,500 for the period January 27, 1987 through December 19, 1987. The complaint did not mention the aggregation statute. Additionally, the trial court's final instructions to the jury included that portion of the complaint stating that "from January 27, 1987 through December 19, 1987" appellant took money from Menards "which had a value in excess of $2,500 * * *." Further, the trial court explicitly instructed the jury that in order to find appellant guilty, it had to find that "[appellant's] act took place from January 27, 1987 through December 19, 1987 * * *." After the trial court finished the jury instructions, the following took place:

> [THE COURT:]  Counsel, do you wish to point out any errors or omissions with regard to the instructions?
> [PROSECUTOR:]  None on behalf of the State, Your Honor.
> THE COURT: [Defense counsel]?
> [DEFENSE COUNSEL]: No, Your Honor.

The jury found appellant guilty of theft of property with a value exceeding $2,500. The evidence adduced at trial consisted essentially of the following:

Appellant, while working for Menards, was cross-trained for numerous positions including those requiring use of the refund register and the end-of-shift balancing of the store's tills.

Customers returning items to Menards must approach the store's service area. There, the items being returned as well as the customer's name and address and the identification of the employee processing the return are listed on a three carbon refund invoice. The refund invoice is then inserted into a slot on a register used exclusively for refunds and the transaction is rung on the machine. Menards has only one refund register and it will not function properly unless there is paper in the refund invoice slot. When a return is rung on the refund register, it prints a "validation" including the date and time of the transaction on the portion of the refund invoice that was inserted into the machine. Additionally, the register records each transaction internally on a "journal tape." After the validation is printed and the transaction is recorded on the journal tape, the register's cash drawer opens and the return amount is counted from the till and given to the customer. The customer then signs the refund invoice and retains one carbon while Menards keeps the original and the other carbon. Menards processes 130–150 returns a day.

As time permits after the refund transaction, the employees working the refund register record by hand the refund amounts from the refund invoices in a "refund log." The employee who records the invoice amount(s) in the log is not necessarily the employee who processed the return. Additionally, the recording employee does not sign or initial the refund log. Also, as time permits during a shift and always at the end of a shift, the amounts listed on the log are tallied. That amount is then checked against the amount shown by the journal tape to have been refunded and the amount of cash in the till. When all amounts are consistent, the register is deemed "balanced."

On December 20, 1987, Menards' assistant manager found a refund invoice in the store's parking lot. Other than a validation for $314 plus tax occurring at 5:24 p.m. the previous afternoon, the invoice was blank. It had no identification of the customer, the goods returned or the employee who processed the refund, all of which should have been recorded in the normal course of business. Additionally, all copies of the invoice, including that usually retained by the customer, were still attached together. The assistant manager told no one about the blank invoice; he learned later that morning that the previous day's register had balanced. Investigation by Menards' office staff revealed that the $314 amount had been entered on

the refund log as well as recorded on the journal tape. Additionally, the fact that the amount of money in the till was consistent with the amounts allegedly refunded, per the log and the tape, indicated that the amount of money in question had been taken out of the register.

By comparing the handwriting on refund invoices processed on December 19, 1987, to that for the refund log entry for the $314 entry, it was concluded that the log entry was in appellant's handwriting.

During questioning of a cashier who worked the refund register on the day in question, the assistant manager learned that at 3:30 p.m. the cashier's supervisor left and was replaced by appellant. At that time the refund register balanced. At approximately 5:30 p.m. the cashier saw appellant ringing on the refund register. After logging all invoices the cashier could find, she attempted to balance her register, but was unable to so do. Appellant then took the cash drawer and documentation to a room designated for the balancing of the store's registers. Appellant later emerged claiming the amounts balanced and that the cashier had missed certain invoices including one for $314. The cashier did not recall a $314 return occurring that afternoon.

On December 21, 1987, the store manager questioned appellant about the transaction. Appellant admitted that the $314 log entry was in her handwriting but did not provide an explanation for the blank invoice found in the parking lot or for the fact that the till balanced. Upon being excused to go to the bathroom, appellant left the store and drove away. Subsequently, she returned. During the ensuing conversation with the manager, she again asked to be excused to speak with another employee for a minute. She again left the store but this time did not return.

Menards officials then compared each refund invoice with each return log entry for the period from September 1, 1987 to December 19, 1987. This investigation revealed, among other things, an inconsistency in the return documentation for an automatic garage door opener allegedly returned on December 10, 1987. The custom-er identified on the return invoice testified that, while he did return other items on that date, he neither bought nor returned an automatic garage door opener. He also stated that the person who processed the return for him was a woman but that he could not identify her. Appellant's name is on the return invoice in question, reflecting that she handled the return. She argued, however, that because the portions of the return invoice relating to the garage door opener were in a different colored ink from the legitimate portion of the refund invoice that a third party added the garage door opener to the invoice after appellant had processed the legitimate portions of that return.

For the period from January 1, 1987, to August 3, 1987, the refund invoices and the refund log entries were compared for all days on which appellant worked. The combined investigations revealed 26 days when the refund logs contained entries presumably in appellant's handwriting for which there were no corresponding refund invoices but for which the journal tape indicated refund transaction occurred. On each of these days, the refund register balanced.

The state also introduced circumstantial evidence of the alleged thefts by calling past and present Menards' employees who testified to appellant's knowledge of store procedure, identification of her handwriting on the refund log and her spending habits. Appellant countered by arguing that Menard's lack of refund invoices could be explained by poor bookkeeping. Thus, in addition to denying the alleged thefts, appellant raised the question of how many thefts had actually occurred. Additionally, over defense counsel's objections, the state called a professional handwriting expert who testified that despite seeing the original standards of appellant's handwriting for the first time on the day she testified, she was convinced beyond a reasonable doubt that the questioned refund log entries were in appellant's handwriting.

## ISSUE

Is appellant entitled to a new trial because the jury was misinstructed regarding

the period of time over which it could aggregate the value of the money allegedly taken in order to reach the $2,500 threshold?

## ANALYSIS

Under the Rules of Criminal Procedure, this court may review any matter "as the interests of justice may require." Minn.R. Crim.P. 28.02, subd. 11. In this case, appellant was charged with theft in excess of $2,500 pursuant to Minn.Stat. § 609.52, subds. 2(1) and 3(2) (1988). Under subdivision 2(1), a person commits theft who

> intentionally and without claim of right takes, uses, transfers, conceals or retains possession of moveable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property;

Regarding aggregation of amounts allegedly stolen

> in any prosecution under subdivision 2, clauses (1), * * * the value of the money * * * received by the defendant in violation of any one or more of the above provisions *within any six-month period* may be aggregated and the defendant charged accordingly in applying the provisions of this subdivision * * *.

Minn.Stat. § 609.52, subd. 3(7) (1988) (emphasis added). This statute was not mentioned in the complaint or to the jury. Further, we note that the decision not to challenge the jury instruction was that of counsel and not appellant.

■ To the extent the state may argue that this case was properly charged and the jury was properly instructed because appellant's conduct constituted a single course of conduct involving a single victim, we note that by statute aggregation is limited to events occurring *"within* any six month period" Minn.Stat. § 609.52, subd. 3(7) (1988) (emphasis added). *See also State v. Hanson,* 285 N.W.2d 483, 485 (Minn.1979) ("If the defendant chooses to commit a series of thefts *within* six months he subjects himself to the [effects of Minn.Stat. § 609.52, subd. 3(7) ]") (emphasis added); *State v. Mathiasen,* 273 Minn. 372, 378–80, 141 N.W.2d 805, 810–11

(1966) (Supreme court relies on the legislature's "unquestioned authority to declare * * * what course of conduct * * * constitute[s] a crime" to find the six month aggregation period to be constitutional). To maintain that appellant was properly charged and the jury properly instructed would be contrary to statute and would infringe on the legislature's authority to define criminal acts.

■ Generally, "defendant [has] forfeited his right to challenge the adequacy of the original [jury] instruction[s] by his acquiescence in [those] instructions." *State v. Shatto,* 285 N.W.2d 492, 493 (Minn.1979). However,

> Plain errors or defects affecting substantial rights may be considered * * * on appeal although they were not brought to the attention of the trial court.

Minn.R.Crim.P. 31.02. Here, the complaint charging appellant specifically states that during the eleven and one-half month period

> [appellant] [i]ntentionally and without claim of right took, * * * money belonging to [Menards] without Menards consent with the intent to deprive [Menards] permanently of the [money] which had a value in excess of $2500.

Further, the trial court's instruction effectively requiring an eleven and one-half month aggregation period in this case is irreconcilable with the six month aggregation limit imposed by Minn.Stat. § 609.52, subd. 3(7). Therefore, we conclude that this case involves "plain error" within the meaning of Minn.R.Crim.P. 31.02 and that justice requires that we address that error on appeal.

The supreme court has stated that "It is well settled that the [trial] court's [jury] instructions *must define* the crime charged." *State v. Crace,* 289 N.W.2d 54, 59 (Minn.1979) (emphasis added); *see also United States v. Drape,* 753 F.2d 660, 662 (8th Cir.1985) "( [t]he [trial] court's charge to the jury *must accurately reflect* the applicable law") (emphasis added), *cert. denied,* 474 U.S. 821, 106 S.Ct. 71, 88 L.Ed.2d 58 (1985). In *State v. Gettel,* 404 N.W.2d

902, 905 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 26, 1987), this court found jury instructions to be fundamentally erroneous because they were based on a repealed statute and inconsistent with the existing statute. Similarly, fundamental error was found regarding the jury instructions in *State v. Johnson*, 374 N.W.2d 285, 288 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985), where there was no explanation of certain of the instruction's critical terms. *Johnson* observed that "detailed [jury] instructions need not be given 'if the instructions [given] *do not mislead the jury * * *.'* " *Id.* (quoting *State v. Heinzer*, 347 N.W.2d 535, 537 (Minn.Ct.App.1984)) (emphasis added in *Johnson*). Here, not only were the jury instructions incompatible with the relevant statute as in *Gettel* but also, as warned against in *Johnson* and *Heinzer*, they affirmatively misled the jury regarding the nature of the crime of which appellant was accused. For these reasons, we cannot say that when viewing the jury's instruction as a whole, the almost doubling of the aggregation period did not prejudice appellant's case. *See Johnson*, 374 N.W.2d at 288 (fundamental error found where "in the context of the whole charge, [an] omission substantially prejudiced Johnson's case"). We thus conclude that not only is the jury instruction issue one of "plain error" but, because of the resulting prejudicial misdefinition of the crime, the error is one of "fundamental law." *See State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983) ("[an appellate court may] consider [a] claim on appeal if the error is 'plain error affecting substantial rights' or if the claim relates to error in 'fundamental law' in the jury instructions").

▮ Regarding fundamental error in jury instructions, *Gettel* stated:

When an issue is submitted to the jury on an erroneous instruction, a new trial should be granted unless it appears as a matter of law that the jury's determination is correct.

*Gettel*, 404 N.W.2d at 905 (quoting *Becker v. Alloy Hardfacing & Engineering Co.*, 401 N.W.2d 655, 660 (Minn.1987)). In this case the vast majority of the evidence against appellant was circumstantial and consisted of the following:

1.  the thefts took place while appellant was working;

2.  testimony identified appellant's handwriting on the refund log;

3.  there were no refund invoices for the questioned transactions.

Also, as the attorneys agreed, the critical evidence in this case pertained to the handwriting on the various return documents. Copies of the invoice logs upon which identifications of appellant's handwriting were based were given to the jury for examination and deliberation purposes. Because the jury was encouraged to independently evaluate the handwriting and come to its own conclusion regarding whether it was appellant's, the jury had a basis, independent from the testimony, to determine whether each of the various invoice log entries were in appellant's handwriting. Thus it is conceivable that the jury, based on its independent evaluation, may have accepted certain of the identifications but not others. Further, it was argued that because of the volume of daily returns Menards handles, loss of some of the return invoices could have occurred. Thus, the lack of an invoice would not necessarily even indicate a theft, much less one by appellant. The verdict does not address the extent to which the jury may have been persuaded that Menards' record keeping was less than perfect. Without any way to determine how credible the jury found the handwriting identifications and appellant's theory of possibly lost return invoices, we are less than certain as a matter of law that the jury's verdict of guilt regarding theft exceeding $2,500 is correct.[1] *See Gettel*, 404 N.W.2d at 905.

While we are aware of the prior opinions of *State v. Anderson*, 394 N.W.2d 813

---

1.  Assuming proper jury instructions covering the late June-early December 1987 period, if the jury as a result of a detached evaluation of the handwriting and/or a belief in the loss of return invoices found that as few as two of the questioned entries were not attributable to appellant, the $2,500 threshold would not be reached.

(Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986) and *State v. Shamp,* 422 N.W.2d 736 (Minn.Ct.App.1986), *rev'd* 427 N.W.2d 228 (Minn.1988), we do not find them to be controlling.

In *Anderson,* a juvenile was referred for trial as an adult. The reference statute allows trial of a juvenile as an adult only for violations committed by the child after reaching age 14, *see* Minn.Stat. § 260.125, subd. 1 (1984); however, the state did not make this distinction at trial. On appeal of Anderson's conviction this court stated:

> Although the majority of the acts allegedly occurred after appellant reached the age of fourteen, it is impossible to determine whether the jury in reaching its decision may have considered acts allegedly occurring before that time. As a result, we cannot determine that [Anderson's] conviction * * * was based only on acts occurring after appellant became fourteen years of age. The conviction must therefore be reversed and the matter remanded for a new trial with evidence limited to the time after appellant reached the age of fourteen.

*Anderson,* 394 N.W.2d at 816.

Subsequently in *Shamp* a statute of limitations was changed and a jury was instructed to consider the defendant's alleged criminal acts both included in and beyond the relevant limitations period. Upon appeal of the conviction, the *Shamp* panel found *Anderson* to be "an analogous case" and concluded:

> As it cannot be said with certainty that the jury did not base its finding of guilt partially on the [events occurring outside the limitations period], we hold that the court's failure to give a cautionary instruction was reversible error.

*Shamp,* 422 N.W.2d at 739.

The supreme court stated:

> We believe that the court of appeals decision is wrong. * * * Under the plain error rule, defendant could obtain relief from the trial court's failure to give such

a cautionary instruction only if the trial court's failure seriously affected substantial rights and only if the error was prejudicial error.

*Shamp,* 427 N.W.2d at 230 (footnote omitted). *See also Shamp,* 427 N.W.2d at 230–31 n. 3. After reviewing the *Shamp* evidence, the supreme court stated:

> In our opinion, there is no reasonable likelihood that the jury somehow discredited the victim's testimony relating to abuse occurring [during the relevant limitations period] but credited her testimony concerning abuse occurring before [that period]. Under the circumstances, we do not believe that the lack of a cautionary instruction was prejudicial.

*Shamp,* 427 N.W.2d at 231 (footnote omitted).

We do not find *Shamp* to be controlling because it involved both a crime correctly charged and defined as well as the lack of a jury instruction which should have kept the jury from considering certain chronologically inappropriate evidence. As noted by the supreme court, Shamp's failure to ask for a limiting instruction constituted a waiver of Shamp's ability to complain about the conduct upon which the jury could convict him. *Shamp,* 427 N.W.2d at 230. Here, not only was the offense misdefined but as a result of that error the jury was specifically and affirmatively directed by the trial court on two occasions to consider evidence upon which a conviction would have been statutorily forbidden. Further, the remainder of the jury instructions in this case do not correct this error. Additionally, to the extent that a lack of prejudice was found in *Shamp* because that case involved "no reasonable likelihood" that the jury found certain evidence credible while finding other evidence not to be so, here, submission to the jury of the documents containing the questioned handwriting provided the jury with an independent basis for assessing the credibility of the handwriting identification.[2] Finally,

---

2. In finding a lack of prejudice to appellant, the dissent essentially engages in a sufficiency of the evidence review and concludes that because the evidence would have been sufficient had appellant been properly charged and the jury properly instructed, appellant was not prejudiced. We disagree with this analysis because it presumes that all of the evidence so reviewed

we note that while failures to charge and to instruct on an essential element of the crime might occasionally be regarded as nonprejudicial, such a combination of failures can scarcely be approved as consistent with due process of law without significant inquiry.

### DECISION

Because appellant was mischarged and the jury was misinstructed regarding the statutory aggregation period for theft, appellant was convicted of a crime which does not exist in Minnesota. Therefore, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

HUSPENI, J., concurring in part and dissenting in part.

HUSPENI, Judge (concurring in part, dissenting in part).

While I concur with the majority's determination that the charge and the jury instruction produce a plain and a fundamental error, I respectfully dissent from the majority's conclusion that *State v. Shamp,*

would have been found credible by the jury. The essential result of the jury instruction in this case was that appellant was deprived of a jury trial on the issue of whether the state fulfilled its burden of proof regarding the statutory requirement that appellant have stolen in excess of $2,500 *within six months.* By analogy, where a jury convicted a defendant of murder but, because of the jury's instructions, the verdict did not necessarily reflect a finding that "[defendant] killed, attempted to kill, or intended to kill," *Cabana v. Bullock,* 474 U.S. 376, 383, 106 S.Ct. 689, 695, 88 L.Ed.2d 704 (1986), the supreme court stated:

A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime.

*Cabana,* 474 U.S. at 384–85, 106 S.Ct. at 696–97 (other citations omitted). While we cite *Cabana* for illustrative purposes only, we note that if this court were to affirm appellant's conviction,

422 N.W.2d 736 (Minn.Ct.App.1988), *rev'd* 427 N.W.2d 228 (Minn.1988) is distinguishable from the instant case.

Initially, it should be noted that the issue addressed by the opinion of this court in this case was not raised before the trial court, nor was it raised or briefed by the parties. The issue of the effect of Minn. Stat. § 609.52, subd. 3(7) was first raised as a result of questioning from the bench at oral argument.

In both *Shamp* and *Anderson,* 394 N.W.2d 813 (Minn.Ct.App.1986), this court granted a new trial because of the jury's consideration of evidence regarding events outside the relevant time period.[1] While the supreme court did not review *Anderson,* this court's *Shamp* opinion, which specifically relied on *Anderson's* reasoning, was reversed. Thus the continued viability of *Anderson* is questionable at best. *See Shamp,* 427 N.W.2d at 230 n. 3. In reversing this court, the *Shamp* court examined the evidence and concluded that the lack of the limiting instruction was not prejudicial, because there was "no *reason-*

because we believe that there is sufficient evidence to support her conviction which the jury should have found credible if appellant were properly charged and the jury were properly instructed, such an affirmance would run afoul of the spirit of *Cabana.*

1. The majority distinguishes *Shamp* from this case based on that case's lack of an instruction requiring the jury not to consider certain "evidence" chronologically inappropriate while here, the trial court specifically directed the jury to consider such evidence. However, unless specifically instructed otherwise, juries are *generally* instructed to consider "all the evidence * * * heard and seen in [a] trial * * *." *See* Crim.Jig. 3.01. This jury was so instructed. I conclude the lack of a specific limiting instruction and an instruction requiring the jury to consider all the evidence before the court are functionally equivalent, and should not form the basis of distinction between cases. I am also unable to distinguish this case from *Shamp* on the basis that *Shamp* involved the waiver of an affirmative defense while this case involved the misdefinition of the offense. The *Shamp* court addressed the waiver issue but went on to apply the plain error analysis. Thus, *Shamp's* conviction was effectively affirmed on two independent grounds. Therefore, I believe that after finding plain error in this case the alternative analysis used in *Shamp* is fully applicable.

*able likelihood* that the jury somehow discredited" testimony regarding events within the permissible time period but believed the testimony regarding the events outside that period. A similar analysis in this case produces an identical result. *Shamp*, 427 N.W.2d at 231.

Here, I submit that the erroneous charge and jury instruction did not "seriously affect" appellant's "substantial rights" and therefore were not prejudicial. *See Shamp*, 427 N.W.2d at 230. State's exhibit 84 summarizes the dates and amounts of the thefts. Because of the theft amounts and their chronological dispersal as represented on that exhibit, any six month period shows theft of an amount exceeding $2,500. Therefore, the failure to restrict the jury's consideration to a particular six month period is not prejudicial.

The grant of a new trial on the basis that the jury *might* have found certain handwriting identifications not to be credible involves speculation and does not reach the level of "reasonable likelihood" of error discussed in *Shamp*, 427 N.W.2d at 231. Granting a new trial also casts doubt on the jury's deliberation process: it requires the inference that the jury, while considering exactly the same testimonial evidence, reached different conclusions regarding the credibility of the handwriting identification for different invoice log entries.

I am unable to distinguish this case from *Shamp* and would therefore affirm the jury's determination of guilt.