**STATE of Minnesota, Petitioner, Appellant,**

v.

**Stephanie Ann GLIDDEN, Respondent.**

**No. C8–89–1019.**

Supreme Court of Minnesota.

May 18, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., M. Katherine Doty, James J. Weber, Jr., Anoka, for petitioner, appellant.

Corey J. Ayling, O'Connor & Hanahan, Minneapolis, for respondent.

WAHL, Justice.

Defendant Stephanie Ann Glidden was charged by complaint with theft over $2,500 based on an allegation that in a series of incidents during the period from January 27, 1987, through December 19, 1987, she stole over $10,000 from a cash drawer in the refund department of her employer, Menards in Fridley. After defendant was convicted, she appealed to the court of appeals, raising a number of issues. The court of appeals did not decide those issues. Instead, it decided the appeal on the basis of an issue which one of the judges of the court of appeals apparently raised at oral argument, specifically, whether the trial court erred in failing *sua sponte* to instruct the jury that in order to find defendant guilty it had to conclude that defendant had stolen at least $2,500 within a 6–month period. The majority of the court of appeals concluded it was plain error for the trial court to fail to do this and that the error was prejudicial because it was "less than certain" the jury was convinced at least $2,500 was taken within a 6–month period. *State v. Glidden*, 451 N.W.2d 331, 335–37 (Minn.App.1990). The dissent agreed with the majority that it was error not to the instruct the jury on the 6–month issue but, relying on our opinion in *State v. Shamp*, 427 N.W.2d 228 (Minn.1988), concluded the error was non-prejudicial because there was "no reasonable likelihood" the verdict would have been different if the instruction had been given. 451 N.W.2d at 337–38. We reverse the court of appeals and remand the case to that court for consideration of the issues raised by the defendant in her brief on appeal.

On Sunday morning, December 20, 1987, Michael Rinderknecht, an assistant store manager at Menards in Fridley, found a refund invoice on the ground of the employees' parking lot. The three-part form was blank except for a cash register validation indicating that $314 plus tax had been refunded at 5:24 p.m. on Saturday, December 19. It was immediately apparent to Rinderknecht that someone had stolen money. This was because (a) the invoice was blank whereas normally an invoice is placed in the cash register for validation only after the customer returning something fills in his or her name and the kind and quantity of goods returned and then signs the form, (b) all three copies were intact, including the copy routinely given to the customer, and (c) the store's part of the form is supposed to remain in the customer service area of the store.

After determining that the $314 plus tax refund had been logged-in and that that amount of money had been taken out of the cash drawer, Rinderknecht determined that the handwriting on the log entry matched that of defendant, Stephanie Glidden, not that of the other employees with access to the log. Another employee said she had trouble balancing a cash drawer on the day in question and that defendant, after offering to help, took the invoices, the log, and cash drawer and did the balancing. Defendant told this employee that the employee had missed three invoices, including one for $314. The employee responsible for the refund register said no customer had received a refund as large as $314. The store manager confronted defendant the following day. Defendant identified her handwriting on the refund log entry corresponding to the blank invoice found in the lot. She said she had to go to the bathroom but instead she immediately left the store. She returned later but then left just as fast and never returned to work again.

The store conducted a painstakingly detailed internal investigation. For the period from September 1, 1987 through December 19, 1987 the store physically compared every entry on the refund log with its corresponding invoice. For the months be-

fore September 1987 the store examined only refund documents generated on the dates defendant worked. Every log which corresponded to a missing invoice was in defendant's handwriting. Employee time-cards showed that defendant had worked every day that money was missing and that she was the only refund employee with authority to work at the refund cash register who was present for each of the 26 days on which refund money was taken. The total amount of money taken from the store by defendant in the series of 26 transactions was $10,850.38.

At defendant's trial a questioned documents examiner testified that each of the logged entries corresponding to a missing invoice was written by the person (*i.e.*, defendant) whose handwriting sample she had used for comparison purposes. The jury was also allowed to compare the known sample of defendant's handwriting with the written entries.

Recently, in *State v. Hannuksela*, 452 N.W.2d 668, 673–74 n. 7 (Minn.1990), we said that it is proper for an appellate court to decide an issue not raised on appeal only when the reasoning relied upon by the appellate court is neither novel nor questionable. Needless to say, an appellate court should exercise this authority only sparingly. In this case we conclude that the court of appeals erred in doing so.

The statute, section 609.52, subdivision 3(7) (1988), provides that in certain prosecutions "the value of the money or property or services received by the defendant * * * within any six-month period may be aggregated and the defendant charged accordingly * * *." In the absence of such a statute prosecutors sometimes would and sometimes would not be able to aggregate a number of individual takings in order to obtain a felony theft conviction rather than a number of misdemeanor theft convictions. The cases from other jurisdictions indicate that without such a statute (a) takings of different articles from different victims at different times and places cannot be aggregated; (b) takings of different articles at one time and place from the same victim may be aggregated; (c) takings of small amounts from the same victim over a period of time may be aggregated if the takings are pursuant to a single scheme (as in the typical case of an employee stealing money from his or her employer over a period of time); and (d) takings of small amounts from different victims at one time and place may be aggregated. W. LaFave and A. Scott, *Criminal Law* § 87, at 635 (1972). The statute's primary purpose appears to be to do two things: one, to make it possible to aggregate a number of takings from different persons at different times; two, to provide a limit of 6 months on the aggregating period.

It would be one thing to invoke the statute in a case like this if it were clearly in the defendant's interests to do so, as where the defendant took, for example, $700 on 4 separate occasions over a 2–year period with each taking separated by a period of more than 6 months. But the reality is that it is often in the defendant's best interests for the prosecutor to aggregate all the various takings over a period longer than 6 months into a single felony theft charge. This is the case when the defendant has taken, for example, $700 a month over a 1 or 2–year period. In such a case the prosecutor traditionally has had the option of aggregating all of the takings into one felony charge or of filing multiple charges, with each charge aggregating a number of takings to reach the $2,500 level. If the prosecutor files multiple charges and the defendant is convicted of all of the charges, then the trial court can use the so-called *Hernandez*[1] method of calculating the defendant's criminal history score and the defendant, although a first-time offender, might wind up getting the sentence applicable to a person with a large criminal history score. *Compare State v, Moore*, 340 N.W.2d 671 (Minn.1983) (aggregation used to give a first-time offender a large criminal history score and prison sentence) *with State v. Lalli*, 338 N.W.2d 419 (Minn.1983) (aggregating multiple takings into a single charge rather than into multiple charges).

---

**1.** *See State v. Hernandez,* 311 N.W.2d 478 (Minn. 1981).

This case is a case where the aggregation of all the taking into one charge was a benefit to the defendant, not a detriment. If the prosecutor had wanted, the prosecutor could have charged defendant with multiples counts of theft over $2,500.

■ Under the *Hannuksela* approach, it was improper for the court of appeals to raise this issue and decide it as it did because it is not at all clear that it was error for the trial court to fail *sua sponte* to instruct the jury that in order to find defendant guilty it had to conclude defendant had stolen at least $2,500 within a 6–month period. Suffice it to say, the issue is a novel one that we have not decided before and the court of appeals' reasoning is questionable. Under the circumstances, the court of appeals should not have raised and decided the issue.[2] For this reason, we do not decide the issue.

■ We add, however, that even if defendant had raised the issue on appeal and even if we were to conclude that such an instruction should have been given, we still would not grant defendant a new trial on this record.

In *State v. Shamp*, 427 N.W.2d 228 (Minn.1988), we held that under the plain error rule the defendant there could obtain relief from the trial court's failure to caution the jury not to base any verdict of guilt on conduct occurring outside the statute of limitations only if the trial court's failure seriously affected substantial rights and only if the error was prejudicial error. *Id.* The court of appeals in that case based its conclusion that the lack of a cautionary instruction was prejudicial on the fact that it could not be said with certainty that the jury did not base its determination of guilt partly on conduct occurring outside the statute of limitations. *Id.* In disagreeing with the conclusion that any error was prejudicial, we made it clear in *Shamp* that the test of harmless error is not whether or not it is certain or less than certain the error affected the verdict. Rather, we stated the test as whether there was or was not a reasonable likelihood that any error substantially affected the verdict. *Id.* at 231. Because there was "no reasonable likelihood" that the giving of a cautionary instruction would have led to a different result, we held that any error was non-prejudicial. *Id. See also State v. Forcier*, 420 N.W.2d 884, 887 (Minn.1988), and *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988).

In this case the court of appeals again used the harmless error test disapproved of by this court in *Shamp*. Specifically, it said that the test was whether "we are less than certain as a matter of law that the jury's verdict of guilt * * * is correct." 451 N.W.2d at 335 (relying on *State v. Gettel*, 404 N.W.2d 902, 905 (Minn.App. 1987), *pet. for rev. denied* (Minn.1987)). As the dissent in the instant case correctly pointed out, this is not the correct test. Rather, the test is the one we used in *Shamp*.

Using the *Shamp* test, we conclude that there is no reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury, which is presumed to be a reasonable jury.

Accordingly, we reverse the decision of the court of appeals and remand to that court for consideration of the issues raised by defendant on appeal but not decided by the court of appeals in its decision.

Reversed and remanded to court of appeals.

---

**2.** *Cf. State v. Belfry*, 353 N.W.2d 224, 227 (Minn. App.1984), *pet. for rev. denied* (Minn.1984), where a different panel of the court of appeals held that the defendant forfeited the issue by failing to object to the aggregation of eight takings from eight customers over a 1–year period into one charge.